In re J. M. WELLS, INC., Bankrupt, Appellant.

In re J. M. WELLS, INC., Bankrupt, Harold A. Leventhal, Appellant.

Nos. 77–1456, 77–1457.

United States Court of Appeals, First Circuit.

Argued March 9, 1978.

Decided May 15, 1978.

Roy Frank Kipp, Boston, Mass., with whom Harold A. Leventhal, Boston, Mass., was on brief, for appellants.

Henry C. Ellis, Taunton, Mass., on brief for Philip J. Assiran, appellee.

Gerald P. Tishler and Richard Mikels, Boston, Mass., with whom Joseph Braunstein, Julius Thannhauser, Cohn, Riemer & Pollack, Kenneth Korb, and Brown, Rudnick, Freed & Gesmer, Boston, Mass., were on brief, for appellees.

Before CAMPBELL, Circuit Judge, BOWNES, Circuit Judge, PETTINE, District Judge:*

LEVIN H. CAMPBELL, Circuit Judge.

■ This case raises the question whether a bankrupt whose assets were substantially exceeded by his debts may appeal allegedly excessive attorneys' fees paid out of the estate. We answer the question in the negative, but in view of the nature of the allegations, we have nonetheless examined the fees in question.

Creditors filed an involuntary petition in bankruptcy against J. M. Wells, Inc. on February 22, 1973, and the company responded by filing for reorganization under Chapter XI. Ralph Cohn was appointed receiver on August 3, 1973, and was permitted to act as his own counsel on August 16, 1973. Although a plan of reorganization was initially approved by the creditors, on March 25, 1974, the bankruptcy judge ruled that the plan was not feasible and adjudicated the company a bankrupt. Cohn was appointed trustee on that date. On April 10, 1974, Cohn was authorized to prosecute a suit already commenced in state court against the Taunton Redevelopment Authority, and on April 18 Cohn was authorized to employ himself as attorney for the trustee. Claims for fees for various legal services were filed in April, 1976, and the bankrupt entered an appeal from orders of the court granting these claims in part. The attorneys filed motions to dismiss, alleging that Wells lacked standing to object to the fees. The district court after a hearing granted these motions, and Wells appealed.

At the time the fees were allowed, the assets of the bankrupt equalled $114,095.57, priority claims equalled $25,438.77, and unsecured claims equalled $192,057.65. The allowed attorneys' fees amounted to $35,421.28, leaving $53,235.52 for the unsecured creditors after the priority claims had been satisfied in full. On March 14, 1977, the referee ordered payment of all the priority claims and distributed $25,657.45 to the unsecured creditors. Because many of the creditors' claims, especially those of the family associated with the bankrupt, had been settled or eliminated through litigation, the payments to the unsecured creditors represented a 25% dividend on then outstanding claims of $102,629.51. The balance of the cash on hand will be distributed after resolution of this dispute. Assuming no future increase in fees, the total dividend of the unsecured creditors should approximate 50%.

The lion's share of the fees went to Cohn and his law firm, Cohn, Reimer & Pollack. Besides commissions of $4,552.31 for services as receiver and trustee, Cohn and his firm received $4,000.00 as counsel to the receiver and $15,000.00 as counsel to the trustees. Kenneth Korb and his firm, Brown, Rudnick, Freed & Gesmer, received a fee of $6,000.00 pursuant to 11 U.S.C. § 104(a)(3) as counsel for intervening creditors who opposed the attempt to reorganize the company under Chapter XI. Christopher Byron, the state court receiver, was

---

* Of the District of Rhode Island, sitting by designation.

awarded a fee of $2,500.00. Counsel for Wells, the bankrupt, received $1,500.

The only party to this proceeding that challenged the fee awards was Wells, the bankrupt.[1] Wells does not argue, as on this record it could not, that the disallowance of the fees charged the estate could result in assets exceeding the claims of creditors. Instead Wells acknowledges that it has no financial interest in the outcome of this appeal but argues this court has inherent jurisdiction to redress this alleged despoliation of the estate by officers of the court. Wells cites *York Intern. Building, Inc. v. Chaney*, 527 F.2d 1061, 1077 (9th Cir. 1975), as authority for this court's jurisdiction.

■ The right to appeal from orders of a bankruptcy court is limited by 11 U.S.C. § 67(c) to "persons aggrieved" by such orders, and traditionally "injury in fact" has been required of such persons. *E. g., In re Harwald Co.*, 497 F.2d 443 (7th Cir. 1974). In particular a bankrupt that has no hope of obtaining any return from its estate consistently has been held to lack standing to contest orders affecting the size of the estate. *Skelton v. Clements*, 408 F.2d 353 (9th Cir.), *cert. denied*, 394 U.S. 933, 89 S.Ct. 1202, 22 L.Ed.2d 462 (1969); *Hartman Corp. of America v. United States*, 304 F.2d 429 (8th Cir. 1962); *Castaner v. Mora*, 216 F.2d 189 (1st Cir. 1954). The exception to the rule involved in *York Intern. Building, supra,* where the bankrupt would create an excess of assets over debts if it were to prevail on its appeal, does not apply here. The bankrupt's interest in the right administration of estates can be protected by the creditors themselves, without permitting the needless multiplication of lawsuits that would arise from permitting insolvent bankrupts standing to sue.

■ Wells argues that even if this court and the district court below lack juris-diction to entertain this appeal, "equity" demands that the excessive fee awards be set aside. But federal courts even in proceedings of bankruptcy remain courts of limited jurisdiction, and "the equitable power of the bankruptcy court may only be exercised within the limits of the jurisdiction established by the Bankruptcy Act." *In re Harwald Co., supra* at 445. Consequently this court lacks jurisdiction over this appeal, as did the district court below.

■ Although normally the absence of jurisdiction would end the matter, the fact that this dispute involves allegations of misconduct on the part of attorneys acting as officers of a federal court leads us to inquire further. At the outset we note the principles that apply to such awards: a trustee or receiver cannot recover additional legal fees for services that have not been authorized by the court; a trustee or receiver cannot seek additional compensation for the performance of his statutory fiduciary duties; and attorneys' fees generally are especially subject to the supervisory power of the court, which will not permit its officers to obtain excessive fees that unreasonably diminish an estate.

We have examined the itemized accounts submitted by the attorneys in this case and the awards made. For the most part the fees seem within bounds. The record in no way supports charges of impropriety as to the fees awarded Brown, Rudnick, Freed & Gesmer and Christopher Byron, which were substantially reduced by the bankruptcy judge from the amounts initially requested. Cohn, Reimer & Pollack in their capacity as counsel to the receiver sought compensation for 35.8 hours rendered before their appointment as counsel out of a total of 280.4 hours. The pre-appointment charges are in apparent disregard of Fed.R.Bankruptcy P. 219(c)(2),[2] but since the bankruptcy court

---

1. Harold A. Leventhal, attorney for Wells, has joined in the appeal. Wells makes no challenge to Leventhal's fee.

2. The Rule states:
  "The compensation allowed by this title to a trustee, receiver, or a marshal shall be in full compensation for the services performed by him as required by this title and by these rules, but shall not be deemed to cover expenses necessarily incurred in the performance of his duties and allowed upon the settlement of his accounts. Additional compensation may be allowed for legal or other serv-

awarded less than a third of the $12,500.00 requested, we cannot say the actual award was in conflict with the Rule. We are, however, disturbed that hours in apparent excess of the Rule should have been claimed.

The one allowed item which we cannot adequately square with the record is the $15,000.00 received by Cohn, Reimer & Pollack as counsel to the trustee. Of the 434 hours billed, 65.4 were for services rendered before Cohn was appointed as counsel. Inasmuch as Cohn, Reimer & Pollack received all of the fee claimed in this capacity, it would seem that the bankruptcy court as well as Cohn may have disregarded Rule 219(c)(2). On the other hand, some of these hours appear to have been connected with the Taunton Redevelopment Authority litigation, which the bankruptcy court did authorize, and the balance conceivably may have been regarded as a continuation of Cohn, Reimer & Pollack's services as counsel to the receiver, *cf. In re Hite,* 2 F.Supp. 536 (W.D.Pa.1932). But the bankruptcy court made no finding to this effect and Cohn and his firm have said nothing to explain the facial impropriety of this portion of the fee in spite of the opportunity we afforded them.[3] Furthermore, although we do not accept Wells' allegations that the majority of the services claimed for the counsel's fee were actually non-legal in nature and therefore embraced by the statutorily set trustee's fee, *see* Fed.R. Bankruptcy P. 219(c)(3), a few of the itemized services have more of the flavor of a trustee's duties than a counsel's.

If we had jurisdiction, we would remand for reconsideration of the trustee's counsel's fee, recognizing at the same time that there may be some explanation. As it is, we can merely note the matter, leaving it to the bankruptcy judge *sua sponte* to take such corrective or counterbalancing action, if any, as may be within his powers at this

date should he determine that the fee includes hourly charges forbidden by the Rule. We add that on the basis of the necessarily limited information before us, the bankruptcy seems to have resulted in a fair recovery for the unsecured creditors on whose behalf the trustee acts, and that the fees, overall, do not seem grossly disproportionate.

*Appeal dismissed.*

---

ices not required of him by this title or by these rules, but only if such services were authorized by order of the court before they were rendered."

*See also Beecher v. Leavenworth State Bk.,* 184 F.2d 498 (9th Cir. 1950)

**3.** We specifically asked counsel to respond to Wells' charges of impropriety including the charge of violation of Rule 219(c)(2).