In re BOTANY INDUSTRIES, INC., H. Daroff & Sons, Inc., Weber & Heilbroner, Inc., Broadstreet's, Inc., Broadstreet's St. Louis, Inc., Fashion Park, Inc., CCS Stores, Inc., Jade Clothing, Inc., Bankrupts.

Nos. 72–273, 72–274, 72–419, 72–420, 72–421, 72–422, 72–495 and 72–531.

United States District Court, E. D. Pennsylvania.

June 23, 1978.

Harry N. Ball, Philadelphia, Pa., Victor McCrea, Sr., Dallas, Tex., for debtor.

Sidney Chait, Philadelphia, Pa., for receiver.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is an appeal from the July 13, 1976, order of the bankruptcy court, pursuant to Rule 801 of the Rules of Bankruptcy Procedure, which dismissed the application of Botany Industries, Inc. ("Botany"), and Michael Daroff for the removal and surcharge of the late Max Robb ("Robb"), the former trustee of all the bankrupt companies in this litigation. The jurisdiction of this Court to review the order of the bankruptcy court is based upon section 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c) (1966). For the reasons stated below, we will affirm the order of the bankruptcy court.

During the bankruptcy proceedings below, appellants Botany, one of the bankrupt companies, and Michael Daroff, a purported creditor of one or more of the bankrupts, filed an application with the bankruptcy court, pursuant to Rules 901(4) and 221(a) of the Rules of Bankruptcy Procedure, and 11 U.S.C. § 11(a)(17) (1966), to remove Robb from his position as trustee of the bankrupts and to surcharge him for alleged fraud and negligence in the performance of his duties. Judge Emil Goldhaber, the Bankruptcy Judge in these proceedings, found that the issue of the trustee's removal was moot because Robb died during the pendency of the application before the bankruptcy court and he, therefore, limited his July 13, 1976, opinion [1] to the question

1. Judge Goldhaber's Opinion and Order dismissing the application for the removal and surcharge of the late trustee is found at pages 287–305 of the designated record on appeal. For the sake of convenience and clarity in this memorandum, we shall refer to both the indexed record page numbers as well as the original page numbers of the briefs, reports, transcripts and other documents before us.

of whether the estate of the late trustee should be surcharged for Robb's alleged derelictions in the performance of his duties. The primary issue in this appeal is whether, at the two October, 1975, hearings concerning the adjudication of the application for the removal and surcharge of the trustee, the bankruptcy court erred when it refused, on the grounds of *res judicata* and collateral estoppel, to admit into evidence testimony offered by the applicants regarding alleged acts of fraud, which arguably would have shown that prior decisions of the bankruptcy and appellate courts relating to the acts of the trustee in the performance of his duties were based upon inaccurate, misleading and fraudulent information. Specifically, appellants argue that the orders of the bankruptcy and appellate courts confirming the sales of the capital stock of three of Botany's wholly owned subsidiaries were entered without the courts' knowledge of a fraud amounting to over $3,000,000 and that further evidence regarding these sales should have been admitted at the October, 1975, hearings as additional support for Robb's removal and surcharge. In response, counsel for the late trustee argues that appellants' charges of fraud in the sales of the capital stock had been previously litigated and adjudicated and that Judge Goldhaber properly refused, under the doctrines of *res judicata* and collateral estoppel, to hear and admit testimony and evidence with respect to such charges.

 Rule 803 of the Rules of Bankruptcy Procedure provides that, unless a notice of appeal is filed with the bankruptcy court within ten days of the entry of the judgment or order that is being appealed, the judgment or order of the bankruptcy judge shall become final. *See* 11 U.S.C. § 67(c). The standard to be followed in reviewing an order of the bankruptcy court is stated in Rule 810 of the Rules of Bankruptcy Procedure, which permits the district court, in ruling upon an appeal, to affirm, modify or reverse a referee's judgment or order, or remand with instruction for further pro-

ceedings, but which requires the district court to accept the referee's findings of fact unless they are clearly erroneous. If there is a reasonable basis in the record for a bankruptcy judge's ultimate findings of fact, a reviewing court cannot substitute its own ultimate findings of fact simply because it regards its views as effecting a more desirable result than that reached by the bankruptcy judge. *In Re Arbycraft Co.*, 288 F.2d 553, 556–557 (3d Cir. 1961).

 In this case, we must determine whether the bankruptcy court was clearly erroneous when it determined that the doctrines of *res judicata* and collateral estoppel barred the admission, at the hearings for Robb's removal and surcharge, of testimony alleging fraud and newly discovered evidence. *Res judicata* precludes litigation of the same cause of action between the same parties or their privies when there is a final, valid judgment rendered on the merits. *Donegal Steel Foundry Co. v. Accurate Products Co.*, 516 F.2d 583, 587 (3d Cir. 1975). *Res judicata* bars not only matters actually presented to sustain or defeat the right asserted in the earlier proceeding, but also any other available matter which might have been presented to that end. *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 378, 60 S.Ct. 317, 84 L.Ed. 329 (1940). Collateral estoppel provides that, when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Harris v. Washington*, 404 U.S. 55, 56, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971) (per curiam). The doctrines of *res judicata* and collateral estoppel apply to the decisions of the bankruptcy courts. *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

Botany was a publicly owned holding company in which appellant Michael Daroff and his brother, Joseph Daroff, owned a 27% controlling interest. On April 25, 1972, after suffering disastrous financial losses, Botany filed its petition for arrangement

under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.,* and Robb was appointed receiver. When all efforts failed to fund a plan of arrangement which had been accepted by a requisite majority of creditors, Botany and its manufacturing and retailing subsidiaries were adjudicated bankrupts on October 29, 1973, with Robb appointed as trustee. Three of Botany's subsidiaries which did not resort to relief under the Bankruptcy Act were the Mill Store, Inc. ("Mill Store"), Baltimore Luggage Company ("Baltimore") and Glenoit Mills, Inc. ("Glenoit"). The sales of the capital stock of Mill Store, Baltimore and Glenoit, pursuant to orders of confirmation of the bankruptcy court, constitute the source of appellants' allegations of fraud and newly discovered evidence, which in turn support their claim for a surcharge of the estate of the late trustee.

The pertinent facts underlying Robb's sales of the capital stock of Mill Store, Baltimore and Glenoit, in the performance of his duties as trustee for the bankrupts, are as follows: On April 26, 1974, nine days after a hearing upon notice to all creditors, the official Creditors' Committees and all previously interested persons, Judge Goldhaber authorized and directed Robb, as trustee, to sell the capital stock and accounts receivable of Mill Store to the Daroff Corporation for $1,200,000,[2] a bid found by the bankruptcy court to be fair and reasonable and more than could have been realized at a public sale. (Record 319; Order of Confirmation, dated April 26, 1974, at 2.) The bankruptcy court also found that there was no valid objection to the transfer of the trustee's right, title and interest in the stock to the Daroff Corporation, and that approval of the sale of the Mill Store assets was in the best interests of the creditors. *Id.*

On July 25, 1974, after a hearing upon notice to all creditors, the official Creditors' Committees and all previously interested persons, Judge Goldhaber authorized and directed Robb, as trustee, to sell the capital stock of Baltimore to Samuel J. Holtzman, President and Treasurer of Baltimore, for $1,250,000, a bid found by the bankruptcy court to be fair and reasonable and more than could have been realized at a public sale. (Record 525; Order of Confirmation, dated July 25, 1974, at 1.) At the hearing, Botany requested a continuance and objected to the sale because of the unavailability of time and comprehensive and current financial, legal and operating data necessary to conduct a physical audit to verify Baltimore's book figures.[3] Judge Goldhaber denied the bankrupt's request for a continuance, and noted that the hearing for the sale of the stock was being held nine months after an order of adjudication of bankruptcy, thereby making mandatory the liquidation of all of the bankrupt's assets. (Record 564–565; N.T. 1407–1408.)

Although appellants did not appeal either order confirming the sales of the capital stock of Mill Store and Baltimore, Botany did attack the validity of these sales in its August, 1974, petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 *et seq.* (*See* Record 362–371.) On September 27, 1974, after hearing testimony with respect to all of Botany's charges,[4] Judge Goldhaber, as Special Mas-

---

**2.** The Daroff Corporation paid $200,000 for the Mill Store capital stock and $1,000,000 for the Mill Store accounts receivable, consisting of Mill Store's indebtedness to Botany Industries, Inc., and to Weber & Heilbroner, Inc. (Record 320; Order of Confirmation, dated April 26, 1974, at 3.)

**3.** At the July 25, 1974, hearing, Botany read into the record the resolutions passed by Botany's Board of Directors at a special meeting on July 24, 1974. (Record 542–544; 558–562, and N.T. 1401–1405.) The resolutions alleged, *inter*

*alia,* that the Presidents of Baltimore and Glenoit had inside information on the internal affairs, assets and corporate values not generally available at that time to Botany or other potential bidders. (Record 560; N.T. 1403.)

**4.** In paragraph 6 of its petition for reorganization under Chapter X of the Bankruptcy Act, Botany asserted:

. . . There is pending in an attempt of partial liquidation a sale or arrangement which petitioner verily believes to be unconscionable

ter, reported to Senior District Judge John Morgan Davis that there was no basis for Botany's assertion that the court-approved sales might be voidable and stated that the time for a challenge to the legality of the sales had passed. (Record 395; Report of Special Master, dated November 12, 1974, at 6.) In an unappealed order, Judge Davis overruled Botany's objections to the Special Master's report; approved, adopted and confirmed the Report; and dismissed Botany's petition for reorganization under Chapter X as not having been filed in good faith. (Record 407; Order Confirming Report of Special Master, dated December 2, 1974.)

Botany had pledged the capital stock of Glenoit to the First National Bank of Boston ("the Bank") to secure loans aggregating more than $14,000,000.[5] On October 7, 1974, after a hearing upon notice to all creditors, the official Creditors' Committees and all previously interested persons, Judge Goldhaber authorized and directed Robb, as trustee, to sell the capital stock of Glenoit to Clarence Hafford, Inc., for $6,487,500, payable to the Bank, and $250,000, payable to Robb, as trustee, in exchange for a release of any claims which Botany had against Glenoit. At the October 7, 1974, hearing, Michael Daroff objected to the sale of the stock (Record 610; N.T. 1545) and stated, in his written objections to the sale, that: the purchase price of $6,737,500 was grossly inadequate; the management of Glenoit deliberately understated its assets, overstated its liabilities and minimized its profits from operations; and, the bankruptcy court should continue the hearing until an independent audit of Glenoit's books and records had been made, in order to provide the true worth of Glenoit to prospective bidders. (Record 569.) The bankruptcy court declined Daroff's request for a continuance, denied his objections and confirmed the sale of the Glenoit capital stock. (Record 615; N.T. 1550.) Michael Daroff petitioned the district court to review the bankruptcy court's order of confirmation of the sale, raising all of the issues in his appeal, including nondisclosure and the fraudulent understatement of assets,[6] that had been

insofar as Baltimore Luggage Co. is concerned in that such proposed sale is a less than fifty percent of its true book value or approximate inventory value. (Record 363.)

In paragraph 12 of the petition, Botany alleged:

In the various and sundry hearings had before the referee and the petitioner and its special attorney of record, the record supports the allegation that in truth and fact its special attorney had and presently has a conflict of interest in that he represents creditors and others of interest as well as petitioner, and that former directors and stockholders have a material conflict of interest in that they and their attorneys are the principal bidders at proposed sale and sales, and to such an extent that it amounts to stifling such bidding. Further, the conduct of the participants amounts to a consipiracy [*sic*] to reduce the bidders and reduce the value of the various assets all to the irreparable damage to the creditors and stockholders and have used their unique information in furtherance thereof to such ends and by reason thereof, all matters should be stayed pending a hearing and if this petition is granted, such stay should be made permanent. (Record 365.)

Finally, in paragraph 13 of the petition, Botany alleged:

As an example of the wrongs being perpetrated by the conflict of interested parties: Botany Mill Store was sold to the former Chairman of the Board and President of petitioner and his director brother as the records will reflect; the proposed sale of Baltimore Luggage Company is to the former owner with his family and present President thereof and former Chairman of the Executive Committee of Botany Industries, Inc. and a like former director of petitioner; all of the time the actual current financial condition of the two corporations was being denied your petitioner who was trying to protect the best interest of the creditors and stockholders; that the various and sundry assets of petitioner are being disposed of at a percentage of their forced sale value to people who have a unique position to know the actual facts and conditions not available to all interested parties and prospective bidders. (Record 365.)

5. Judge Goldhaber found in his Opinion dismissing the application for Robb's removal and surcharge that the value of the Glenoit stock was less than the $14,000,000 for which it was pledged to the Bank. A court-appointed appraiser determined the value of the Glenoit stock to be $6,242,260. (Record 601; N.T. 1536.)

6. Michael Daroff presented the following issues in his appeal to the district court:

1. Should the Bankruptcy Court have conducted an evidentiary hearing to ascertain whether the purchaser withheld favorable financial information within his knowledge to depress competitive [*sic*] bidding?

advanced in the bankruptcy court. On December 2, 1974, Judge Davis affirmed the order of confirmation and dismissed with prejudice Michael Daroff's appeal. (Record 596.) On December 31, 1974, Botany and Michael Daroff appealed to the United States Court of Appeals for the Third Circuit, again advancing all of the charges which were made before the bankruptcy and district courts. (Record 295; Opinion, dated July 13, 1976, at 9.) After a hearing on February 13, 1975, the Court of Appeals affirmed, without opinion, the order of the district court, and subsequently refused appellants' motion for reargument. On October 6, 1975, the United States Supreme Court denied appellants' petition for a writ of certiorari.[7]

In this case, it is clear from the record before us that Judge Goldhaber was not clearly erroneous in his finding that Botany and Michael Daroff were barred by the doctrines of *res judicata* and collateral estoppel from raising the issue of fraud in their application to remove and surcharge the late trustee. Appellants had pleaded, argued and litigated the issue of fraud, in connection with the sales of the capital stock of Mill Store, Baltimore and Glenoit, before the bankruptcy, district and appellate courts and, therefore, under the rule of collateral estoppel, they could not relitigate this same issue in the subsequent proceeding for Robb's removal and surcharge.[8] Further, Judge Goldhaber correctly held that allegations of impropriety or fraud underlying the sales of capital stock were barred by *res judicata* because the orders of confirmation are valid, final judgments under Rules Bankr. Proc. Rule 803, 11 U.S.C. In view of the applicability of *res judicata* and collateral estoppel, at the October, 1975, hearings concerning the application for the removal and surcharge of the late trustee, Judge Goldhaber properly refused admission of any evidence of alleged fraud with respect to the sales of the capital stock of Mill Store, Baltimore and Glenoit.

2. If the prospective purchaser on the one hand, and the chief executive officer of the asset being sold on the other hand, are one and the same, should the Bankruptcy Court require an affirmative showing of full disclosure and good faith before confirming sale?
3. Was the appraisal provided to the Bankruptcy Court understated by failing to list over $3,000,000.00 in foreign assets belonging to Glenoit Mills, Inc.?
4. Was error committed in denying access to prospective bidders of the $6,242,000.00 [*sic*] court appraisal (even without the foreign assets) but sending instead a partial appraisal by a bank in the amount of $2,445,000.00?
5. If the Trustee is relying upon statements of profits and assets prepared by the prospective purchasers, should he be required to obtain independent verification[?] (Record 573; *see* Record 587–595.)

7. *In Re Botany Industries, Inc.*, Bky. No. 72–273 (E.D.Pa., December 2, 1974), *aff'd mem.*, 511 F.2d 1392 (3d Cir.), *cert. denied*, 423 U.S. 834, 96 S.Ct. 59, 46 L.Ed.2d 53 (1975).

8. At the October, 1975, hearings for the removal and surcharge of Robb, appellants' counsel made the following offers of proof with respect to the issue of fraud underlying the sales of the capital stock:

. . . [T]his Court has been misled into a considerable fraud, a fraud amounting to over three million dollars, a fraud where a man acquired a company and used the fraud as collateral. That I am intending to prove by witnesses.

Then I have references to Glenoit Mills. A similar occurrence happened in the acquisition of Baltimore Luggage. I am not impunging any individual. I am just stating the facts that I am prepared to prove, and show that the facts did happen. I am prepared to name what foreign subsidiaries were used, that they existed, that this man who did it and certain counsel knew that he did it. (Record 142–143; N.T. 2015–2016.)

. . . My offer of proof would be simply that Mr. Robb as Receiver did nothing to effectuate a plan of arrangement. He started out like a liquidator and did nothing to run the business. He made no affirmative efforts towards running it as a going business. He was generally guilty of dereliction of duty when he was the Receiver. That's the offer. (Record 163; N.T. 2036.)

. . . All I had was the fraud in Glenoit and the fraud in Baltimore Luggage, where more than two million dollars in fraud has been committed right in this court by these lawyers before your eyes, and if a Bankruptcy Court doesn't want to look at it then I am powerless. (Record 254; N.T. 2127.)

These vague and conclusory allegations demonstrate the intention of Botany and Michael Daroff to relitigate the identical issue of fraud at the hearings for Robb's removal and surcharge.

■ We turn next to the three remaining issues raised in this appeal. First, appellants argue that the bankruptcy court was compelled, under 18 U.S.C. § 3057,[9] to request the United States Attorney to investigate the applicants' allegations of fraud and to review those findings before rendering a final decision with respect to the application for Robb's removal and surcharge. This argument is clearly without merit. Judge Goldhaber had no duty, under 18 U.S.C. § 3057, to report to the United States Attorney all the facts and circumstances underlying the sales of the capital stock of Mill Store, Baltimore and Glenoit because he did not have reasonable grounds for believing that any violations of the bankruptcy laws had been committed, and because the same issue of fraud had been pleaded, argued and litigated before the bankruptcy, district and appellate courts.[10]

■ Second, appellants argue that the bankruptcy court, in the exercise of its equitable powers, should have admitted into evidence testimony alleging fraud in the trustee's performance of his duties and should not have excluded such testimony on the grounds of *res judicata*. This argument is also without merit. Judge Goldhaber, while specifically addressing the equitable powers of the bankruptcy court, found that the applicants' delay, until June 6, 1975, in seeking the removal and surcharge of Robb, constituted a "classic case of laches" and inexcusable delay which, even if there were merit to the charges, would estop the applicants from asserting them. Judge Goldhaber's findings of laches was not clearly erroneous, and it provided grounds, in addition to *res judicata* and collateral estoppel, for the refusal of evidence alleging fraud in the sales confirmed ten to fourteen months earlier.

■ Third, counsel for the late trustee argues that the bankruptcy court, in the exercise of its equitable powers, should have assessed counsel fees of $20,000 against appellants because the application to remove and surcharge the trustee was "frivilous [*sic*], abusive, irresponsible, scandalous and an abuse of the legal processes of a federal court." Although Judge Goldhaber did find that the application and brief of Botany and Michael Daroff were vexatious, he did not find that they had been filed in bad faith. (Record 304; Opinion, dated July 13, 1976, at 18.) Because Judge Goldhaber's finding was not clearly erroneous, and because his denial of an award of counsel fees was not an abuse of discretion, we will not impose such fees upon the appellants.

In conclusion, upon a careful review of the entire record on appeal, consisting of over 1,000 pages of briefs, reports, transcripts, financial statements and other documents, we accept the findings of fact in Judge Goldhaber's July 13, 1976, opinion because we find that they are not clearly erroneous. Therefore, the July 13, 1976, order dismissing the application for the removal and surcharge of the late Max Robb as trustee for the bankrupts will be affirmed.

An appropriate Order will be entered.

9. 18 U.S.C. § 3057(a) provides:

(a) Any referee, receiver, or trustee having reasonable grounds for believing that any violations of the bankruptcy laws or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so. (See footnote on page 799.)

10. The Court notes that, as of the date of this Memorandum and Order, the United States Department of Justice has been conducting a continuing investigation of the Botany bankruptcy for several years.