**In re Ronald J. PARR, Bankrupt.**

**FLUSHING SAVINGS BANK, Appellant,**

v.

**Ronald J. PARR, Appellee.**

**Nos. CV–80–1619, CV–80–2528 and CV–80–3300.**

United States District Court, E. D. New York.

Aug. 31, 1981.

Skadden, Arps, Slate, Meagher & Flom by Michael L. Cook, New York City, for Flushing Savings Bank.

Davis, Polk & Wardwell, New York City, for International Telephone & Telegraph.

Finkel, Goldstein & Berzow, New York City, for Trustee in Bankruptcy.

Jules V. Speciner, Great Neck, N. Y., for Ronald J. Parr.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

Three bankruptcy appeals which arise out of the financial collapse of Ronald J. Parr and Alfred R. Parr (the "Parrs") and their wholly owned corporation, Parr Meadows Racing Association, Inc. (the "Association") are now before this court. The saga of the Parrs and the creditors of the Parrs, including the Flushing Savings Bank (the "Bank"), has been told and retold before Bankruptcy Judge Hall for more than four years. Finally, ripe for examination by the district court are three discrete issues concerning this complex litigation.

Specifically, the issues presented include the following: (1) the Bank moves for an order pursuant to Fed.R.Bankr.P. 920 adjudging Ronald J. Parr guilty of civil contempt; (2) the Bank appeals from an order and decision of the bankruptcy court, dated August 4, 1980, that denied the Bank's motion to have Bankruptcy Judge Hall disqualify himself from the Parr bankruptcy litigation; and (3) the Bank appeals from the Bankruptcy Court's order dated October 28, 1980, denying the Bank's motion for an order requesting the United States Attorney to conduct a criminal investigation of Ronald J. Parr. For the reasons fully set forth below, this court finds Ronald J. Parr guilty of civil contempt, affirms the Bankruptcy Court's decision concerning disqualification and reverses the Bankruptcy Court's Decision concerning the power to request a criminal investigation. These issues will be discussed *seriatim*.

### The Civil Contempt

The Bank is a creditor of Ronald J. Parr and Alfred R. Parr, the above named bankrupts. On August 26, 1976, the Bank loaned $14 million to Parr Meadows Racing Association, Inc. (the "Association") to finance construction of a quarterhorse race track. As security for repayment of the loan, the Association granted to the Bank a first mortgage on the property. The Parr's are indebted to the Bank for an amount in excess of $14 million as a result of their unconditional guarantee of the loan to the Association. Parr filed a Chapter XI petition in June of 1979, shortly after the Association's Chapter XI case was dismissed by the bankruptcy court.

By order of June 19, 1979, the Bank was authorized pursuant to Fed.R.Bankr.P. 11–26 and 205 to "undertake and cause the examinations of persons, firms, corporations and other entities including, without limitation, Ronald J. Parr."

At depositions taken on August 29 and September 11, 1979, the Bank requested documents relating to Parr's expenses as a debtor-in-possession. Despite the June 19 order authorizing the Bank to examine Parr in his Chapter XI case, he refused to submit to a further examination scheduled by his counsel for October 5, 1979. On November 11, 1979, counsel for Parr informed the Bank's counsel that he would not produce the debtor voluntarily for examination despite the bankruptcy court's order of November 2, 1979, which further authorized the Bank to conduct Rule 205 examinations of Parr.

On December 5, 1979, counsel for Parr agreed to produce Parr for examination by the Bank on December 14, 1979, and to produce documents requested by the Bank. Counsel for the Bank agreed to supply Parr with a list of the requested documents which Parr had agreed to produce at the August 29 and September 11 depositions. This list was forwarded to Parr on December 7, 1979. On December 14, 1979, Parr appeared for the examination, but failed to produce a single document. At that examination, Parr claimed that he could not produce those documents requested by the Bank because of alleged objections to such action by the United States Attorney's Office. On December 18, 1979, a hearing was held in the bankruptcy court on Parr's failure to produce the requested documents. At that time, counsel for Parr admitted that the United States Attorney's Office had informed him of no objection to Parr's production of documents. Nevertheless, Parr failed to produce any of the documents on December 18.

On December 21, 1979, the bankruptcy court directed Parr to "commence production of documentary evidence requested by the Bank," and to "continue producing those documents requested . . . on a weekly basis pursuant to prior orders of this court . . . ." Parr failed to comply with this order despite further requests made in writing by the Bank on January 2, 1980, which specified those documents requested. As a result of Parr's failure to comply, the Bank moved on March 4, 1980, for an order under Fed.R.Bankr.P. 920 adjudging Parr guilty of civil contempt, or in the alternative, certifying to a District Judge the facts of Parr's conduct and directing Parr to appear before a District Court and show cause why he should not be held in contempt.

Hearings on the Bank's motion were held in the bankruptcy court on March 4, April 8 and May 1, 1980. During these hearings Parr took a series of inconsistent positions, stating on the one hand, that he could not find certain documents and "in the alternative" that he need not produce those documents because the Assistant United States Attorney had advised against it. At the April hearing, Parr admitted to the existence of many of the documents requested by the Bank and promised to produce them within one week. Production of the documents was not forthcoming and the May 1, 1980 hearing was held as a result of Parr's failure to fulfill his promise. At this hearing, Parr refused to produce those documents he had previously agreed under oath to produce at the April 8 hearing. In contradicting his April 8 testimony, Parr claimed that many of the documents were not in his possession and that certain documents in his possession could not be turned over as they represented records of a confidential meeting with the F.B.I. To date, there has been no showing that either the United States Attorney's Office or the F.B.I. has communicated any objection to Parr's production of the documents requested. The record in fact, as evidenced by the admission of Parr's counsel at the hearing on December 18, 1979, specifically indicates the contrary.

On June 2, 1980, the bankruptcy judge issued a certificate of facts showing the

"willful and intentional contemptuous conduct on the part of respondent Parr," Certificate ¶ 27 at 9, and stated that such conduct warranted the imposition of appropriate punishment under Rule 920 of the Rules of Bankruptcy Procedure. *Id.* The bankruptcy court recommended that, pursuant to Rule 914 and 754(b) of the Rules of Bankruptcy Procedure, "such punishment should include a taxation of all costs, inclusive of reasonable attorneys' fees, incurred or to be incurred by the Bank in connection with the proceedings herein." *Id.* at 9–10. (*Citing Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir. 1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).)

On June 30, 1980, the Bank was served with a supplemental affidavit by Parr in which he admitted that certain documents he had previously refused to produce were in fact available to him at all times and that he had inadvertently "neglected" to produce them. At this time Parr attached certain documents to the supplemental affidavit which purported to satisfy the Bank's requests for documents as itemized by the Bank on December 7, 1979 and January 2, 1980. Parr admitted that he might be in possession of other requested documents and would "renew his efforts to locate" them *if* the Bank would demonstrate that the documents were in his possession.

■ The record before this court clearly demonstrates a litany of non-compliance by Parr with the bankruptcy court's orders.[1] His willful refusal to produce documents as directed by the court's order of December 21, 1979, constitutes contempt under section 41 of the Bankruptcy Act. 11 U.S.C. § 69. Specifically, Parr was ordered by the bankruptcy court to "commence production of documentary evidence requested by the Bank" and to continue to do so on a weekly basis. (*See* Bankruptcy Court Order, dated December 21, 1979.) Despite repeated requests by the Bank for specific documents and despite promises under oath by Parr that said documents did exist and would be forthcoming, he repeatedly failed to comply with the court's order. This court is cognizant of the bankruptcy court's certificate of facts, dated June 2, 1980, which detailed Parr's contempt and stated that the willful and intentional contemptuous conduct of Ronald Parr warrants the imposition of appropriate punishment under Rule 920 of the Rules of Bankruptcy Procedure. After reviewing the facts and the record, this court agrees with the bankruptcy court's conclusion that Parr's conduct constitutes contempt of an order of the bankruptcy court punishable under Fed.R.Bankr.P. 920.

Section 41 of the Bankruptcy Act, 11 U.S.C. § 69 provides that "a person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process, or writ; . . . (3) [or] neglect to produce, after having been ordered to do so, any pertinent document." 11 U.S.C. § 69(a) (1968). Violation of this section subjects the party to punishment "in the same manner and to the same extent as for a contempt committed before [the judge]." 11 U.S.C. § 69(b) (1968). Rule 920(a)(2) authorizes the sanction of civil contempt for a violation of Section 41 upon notice and hearing.[2] *See* Fed.R.Bankr.P. 920.

■ In order to cite a party for contemptuous conduct, it must be established

---

1. Parr, at one juncture, reported that a diary which contained information encompassed within the scope of the documentation sought by the Bank, had been turned over to the FBI on June 19, 1980. This diary, however, was relinquished by Parr after a number of hearings concerning his non-compliance with the order of the bankruptcy court. Indeed, the bankruptcy court certified that Parr's refusal to produce such documents constituted "willful and intentional contemptuous conduct." Parr has thus far failed to explain the inaccessibility of the diary during the full year between the original court order of June 19, 1979 and the subsequent turnover of the document to the FBI on June 19, 1980.

2. These provisions have consistently been upheld by the courts. *See, e. g., Mueller v. Nugent,* 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405 (1902); *Fidelity Mortgage Investors v. Camelia Builders, Inc., supra; In re Rubin,* 378 F.2d 104 (3d Cir. 1967); *In re American Associated Systems, Inc.,* 373 F.Supp. 977 (E.D.Ky.1974); 1 Collier, *Bankruptcy* ¶¶ 2.57, 2.58 at 302, 313–21 (14th Ed. 1974).

that the alleged contemnor had knowledge of the order and that the court's order was specific and definite and that the party's conduct violated the order. *In re Rubin*, 378 F.2d 104 (3d Cir. 1967). *See Terminal R.R. Ass'n v. United States*, 266 U.S. 17, 29, 45 S.Ct. 5, 8, 69 L.Ed. 150 (1924); *Yates v. United States*, 316 F.2d 718, 723 (10th Cir. 1963). It is the deliberate disobedience of a court's order that is the illegal act which constitutes civil contempt, and not the actual intent of the party which is the subject of judicial inquiry. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *N.L.R.B. v. Ralph Printing & Lithographic Co.*, 433 F.2d 1058 (8th Cir. 1970), *cert. denied*, 401 U.S. 925, 91 S.Ct. 883, 27 L.Ed.2d 829 (1971); *In re American Associated Systems, Inc., supra* at 979. Thus, in the instant matter, it is the actual refusals by Parr to produce documents as unequivocally ordered by the bankruptcy court which is the focus of the district court's attention.

The record clearly indicates that Parr was fully cognizant of the bankruptcy court's order regarding the documents in his possession. His repeated promises under oath to deliver the documents, his "on again—off again" admissions of possession, and his refusal at the May 1, 1980 hearing to produce documents that he previously agreed to deliver, conclusively evidence a complete disregard for the integrity of the bankruptcy court.

Pursuant to Rule 920(a)(4) the bankruptcy judge certified the facts of Parr's conduct to this court. Rule 920(a)(4) states in pertinent part:

> If it appears to a referee that conduct prohibited by section 41a . . . may warrant punishment . . . by a fine of more than $250, he may certify the facts to the district judge. On such certification the judge shall proceed as for a contempt not committed in his presence.

While Rule 920 permits a bankruptcy judge to levy a fine not to exceed $250, it does permit certification to a District Judge where greater sanctions are deemed warranted.

■ The bankruptcy judge's findings of fact as set forth in the Certificate should not be set aside by the District Court absent a showing that they are clearly erroneous. *See Fidelity Mortgage & Investors v. Camelia Builders, Inc., supra*, at 51–52. The *Fidelity* court held that Rules 752(a) and 810 prevented a District Court Judge from setting aside findings of fact by bankruptcy judges unless such findings were "clearly erroneous." *Id.; see Nitz v. Nitz*, 568 F.2d 148 (10th Cir. 1977); *In re Botany Indus., Inc.*, 463 F.Supp. 793 (E.D.Pa.1978), *aff'd mem.*, 609 F.2d 500 (3d Cir. 1979); Fed.R. Bankr.P. 752(a) and 810. On the record before this court, there is no evidence to suggest that the "clearly erroneous" standard must be invoked to set aside the bankruptcy court's findings. A sound factual basis exists for the findings made by Judge Hall and set forth in the Certificate. Accordingly, this court accepts the bankruptcy judge's findings of fact and adjudges Ronald J. Parr guilty of civil contempt.

The bankruptcy judge in the Certificate has recommended that pursuant to Rules 914 and 754(b) of the Rules of Bankruptcy Procedure, Parr should be required to reimburse the Bank for all costs, including attorney fees, incurred by the Bank as a result of Parr's failure to comply with the bankruptcy court's orders. This court accepts Judge Hall's recommendation and remands the case to him for findings on the appropriate penalty. It is further ordered that Respondent Parr produce all documents requested by the Bank in compliance with the bankruptcy court order of December 21, 1979.

*The Disqualification of Bankruptcy Judge Hall*

On January 11, 1980, the Bank moved in District Court for an order recusing Judge Hall from the Parr litigation, alleging in

part that Judge Hall had demonstrated bias towards the creditors' position. This court determined on February 1, 1980 that the better procedure was to allow the Bankruptcy Judge initially to consider allegations concerning his own partiality. *See* 28 U.S.C. § 455.

On February 16, 1980, the Bank moved for an order to disqualify Judge Hall under section 455(a) and under the Due Process clause of the Fifth Amendment. The basis of the Bank's motion was that Judge Hall had engaged in *ex parte* conversations with debtor's counsel and other adverse parties, thus creating a reasonable appearance of bias in favor of the debtors. On August 4, 1980, Judge Hall denied the Bank's motion, finding that the *ex parte* communications involved only questions of administration or the exchange of pleasantries.

The Bank now appeals from the August 4, 1980 Order and Decision of the Bankruptcy Court concerning the disqualification of Judge Hall. The Bank claims that certain *ex parte* communications and its own perception of partiality require disqualification under section 455(a) insofar as such communications create the appearance of bias. The Bank further claims that the *ex parte* conversations among Judge Hall, the debtor's counsel and the trustee establish an appearance of bias that is extrajudicial in nature. Judge Hall, in his August 4, 1980 Decision, explained that the conversations involved only judicial discussion of administrative matters and were justified by local rules and by the requirements of the court's administrative functions.

■ Title 28 U.S.C. § 455(a), as amended in 1974 by Pub.L. 93–512, reads as follows:

"(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

This section establishes an objective standard for recusal, creating the "appearance of justice" rule. *In re International Business Machines Corp.*, 618 F.2d 923, 929 (2d Cir. 1980) (hereinafter cited as "In re IBM"). The appropriate test in determining whether a judge should disqualify himself under section 455(a) is whether a reasonable person with knowledge of all the facts would be led to the conclusion that the judge's impartiality might reasonably be questioned. *See Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980); *United States v. Ritter*, 540 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976); *Matter of Searches Conducted on March 5, 1980*, 497 F.Supp. 1283, 1291 (E.D. Wisc.1980); *Smith v. Pepsico, Inc.*, 434 F.Supp. 524 (S.D.Fla.1977).

■ Although this section broadens the ground for recusal or disqualification, the standard remains one of reasonableness and should not be interpreted to include spurious charges of partiality. *Hayes v. National Football League*, 463 F.Supp. 1174, 1180 (C.D.Cal.1979). The legislative history of section 455 as set forth in *3 U.S.Code Cong. and Adm.News*, 93rd Cong., 2d Sess. 1974, pp. 6351–6363, clearly indicates that while enactment of section 455 eliminated the "duty to sit" concept, the test "should not be used by judges to avoid sitting on difficult or controversial cases." *Id.* at 6355. With these standards in mind, the court has carefully examined the Bank's contentions regarding Judge Hall's *ex parte* conversations and finds that they are legally insufficient to grant relief. That is, from an examination of the entire record, including the source of the alleged bias, as well as the nature and realities of the bankruptcy process in court, this court cannot accept the contention that Judge Hall's impartiality can reasonably be questioned.

■ It is well established that *ex parte* communications are presumptively improper. *Glynn v. Donnelly*, 485 F.2d 692 (1st Cir. 1973), *cert. denied*, 416 U.S. 957, 94 S.Ct. 1970, 40 L.Ed.2d 307 (1974). However, disqualification under section 455(a) is man-

dated only when a reasonable person would question the judge's impartiality. *In re IBM, supra.* Thus, the Bank must produce evidence which would lead a reasonable person to question the impartiality of Judge Hall.

 Realizing that any party can complain about a judge's exercise of related judicial functions, courts have consistently held that a reasonable person would not question the judge's impartiality unless at least one incident involved the judge's exposure to a source of bias in an extrajudicial capacity. *See generally In re IBM, supra,* at 929; *see United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *United States v. Haldeman,* 559 F.2d 31, 132 n.297 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *Lazofsky v. Sommerset Bus. Co., Inc.,* 389 F.Supp. 1041 (E.D.N.Y. 1975). Thus, it has been held that a judge may not be disqualified for a bias developed during the very trial in which disqualification is sought. *Hawaii-Pacific Venture Capital Corp. v. Rothbard,* 437 F.Supp. 230 (D.Hawaii 1977). To warrant recusal, even an alleged appearance of bias should be founded, at least in part, upon an extrajudicial source, and not merely upon what the judge has learned during the course of a particular case nor upon trial rulings and conduct. *In re IBM, supra; United States v. Corr,* 434 F.Supp. 408, 411–12 (S.D.N.Y. 1977).

 In the instant case, the appellant Bank recognizes this requirement, but claims that the *ex parte* conferences with the debtor's counsel took place outside of the trial itself and therefore the apparent bias was extrajudicial in nature. This contention simply ignores the fact that related judicial functions extend beyond the courtroom door. Further, *ex parte* conversations occasioned by the exercise of related judicial functions do not stem from an extrajudicial source. *See United States v. Haldeman, supra,* at 133 n.301. To so argue,

would by definition deem all *ex parte* communication as extrajudicial, and thus pave the way for rampant judge-shopping. Judge Hall, in his denial of the Bank's motion, indicated that the day-to-day administration of bankruptcy cases often demands that judges have *ex parte* contacts with participants in bankruptcy cases. *See* Eastern District Court Local Bankruptcy Rule XI–4.

Even assuming that section 455(a) dispensed with the proclivity that the apparent bias should be extrajudicial, the Bank still must produce evidence which would lead a reasonable person to question the judge's impartiality. Here, the Bank has presented "observations" of debtors and their counsel emerging from the judge's chambers or conversing in the hallway of the courthouse. In light of the nature of the bankruptcy practice, the role of the bankruptcy judge *vis a vis* the trustee, the requirements of the court's administrative functions, the willingness of Judge Hall to explain these conversations, and the limited number of such conversations, the Bank's contentions are insufficient to reasonably question the judge's impartiality. *See In re IBM, supra; Potashnick v. Port City Construction Co., supra.*

 Indeed, a second major creditor saw the disqualification motion as bordering on the frivolous and noted that the *ex parte* conversations were all of the type with which all lawyers are familiar. Further, the legislative history of section 455(a) makes it abundantly clear that the standard for disqualification is still one of reasonableness and should not be interpreted to include a loosely based charge of partiality. *See 3 U.S.Code Cong. & Admin.News 93d Cong., 2d Sess. 1974,* at 6351–6363.

 While the Bank has alleged that Judge Hall treated the recusal motion as if it had been made on the basis of actual bias, the cases are clear that use of the "reasonable man" standard established in conjunction with section 455, *see e. g., In re IBM,*

supra; *Whitehurst v. Wright*, 592 F.2d 834 (5th Cir. 1979); *United States v. Baker*, 441 F.Supp. 612 (M.D.Tenn.1977), does not automatically require recusal merely upon the filing of the request. *See Hayes v. National Football League, supra*, at 1181, *Baker v. City of Detroit*, 458 F.Supp. 374 (E.D.Mich. 1978); 28 U.S.C. §§ 144, 455. A federal trial judge must hear cases unless a "reasonable factual basis" is demonstrated through probative evidence to doubt the fairness of that court. *Blizard v. Frechette*, 601 F.2d 1217, 1221 (1st Cir. 1979); *see United States v. Corr, supra*, at 412. There has been no such showing in this matter.

■ The Bank's contentions regarding the Fifth Amendment and the Code of Judicial Conduct similarly lack merit. The Fifth Amendment's Due Process clause will bar a trial where the appearance of justice is not satisfied. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *In re IBM, supra*, at 923 n.11. This court recognizes that this constitutional right is independent of section 455, *see United States v. Sciuto*, 531 F.2d 842, 845 (7th Cir. 1976); *United States v. Conforte*, 457 F.Supp. 641, 659 n.13 (D.Nev.1978), *aff'd*, 624 F.2d 869 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980), and may be invoked in situations where the statutes do not technically apply. It is clear, however, that any bias violative of Due Process "would have more readily violated § 144 and § 455." *United States v. Haldeman, supra*, at 130 n.276; *accord In re IBM, supra*, at 932 n.11; *United States v. Conforte, supra*, 457 F.Supp. at 659 n.13. Therefore, the appellant's claims under the Fifth Amendment are rejected upon the same grounds as its statutory claims.

■ The Bank's claim concerning the Code of Judicial Conduct similarly fails in

this instance.[3] Generally, isolated instances of *ex parte* communications, in and of themselves, are simply not grounds for recusal, *see United States v. Haldeman, supra*, at 133 n.301; *Bradley v. Miliken*, 426 F.Supp. 929 at 941 (E.D.Mich.1977), and are in fact mandated in certain circumstances. *See* Eastern District Court Local Bankruptcy Rule XI–4[4].

■ Furthermore, Canon 3 C, which provides that a judge should disqualify himself where his impartiality might reasonably be questioned, was in effect enacted into law with the 1974 amendments to section 455. *See Bradley v. Milliken, supra*, at 932. This court finds no violation of the standard set forth in section 455, and thus, no violation of Canon 3 C.

■ As a final note, it would seem inequitable after four years of proceedings to disqualify the bankruptcy judge. These proceedings have been long and cumbersome and frequently interrupted by appeals and collateral hearings. During this entire period, Judge Hall has familiarized himself with an enormously complex litigation. Transfer of these cases would place a grave burden upon the transferee court and would represent a waste of judicial resources. These considerations, coupled with the Bank's failure to demonstrate a reasonable basis for disqualification under 28 U.S.C. § 455 the Due Process clause of the Fifth Amendment, and the Code of Judicial Conduct, persuade this court to affirm Judge Hall's denial of the Bank's motion for disqualification.

*The Request for a Criminal Investigation*

The Bank appeals from the bankruptcy court's order of October 28, 1980, based upon a memorandum decision of June 16,

---

3. Canon 3A(4) reads as follows:

 A Judge should accord to every person who is legally interested in a proceeding, ... full right to be heard according to law, and, *except as authorized by law*, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. (emphasis added)

4. The rule provides in pertinent part that:

 As soon as practical ... the debtor ... and the debtor's attorney shall attend before the bankruptcy judge for an informal conference to discuss the petition and any matters pertinent thereto.

1980, denying the Bank's motion for an order under 18 U.S.C. § 3057 and section 14(d) of the Bankruptcy Act, requesting an investigation by the United States Attorney and Suffolk County District Attorney of the possible criminal conduct of Ronald J. Parr concerning fraudulent transfers of property. The Bankruptcy Judge denied the motion on the following grounds: (1) the court lacked the power to direct an investigation by the United States attorney; (2) "reasonable grounds" did not exist for believing that a violation of the Bankruptcy laws had been committed; and (3) the court lacked authority to order investigation by the Suffolk County District Attorney. *In re Parr*, 4 B.R. 646 (Bkrtcy. 1980).

■ Title 18 United States Code § 3057(a) reads in part as follows:

"Any referee, receiver, or trustee having reasonable grounds for believing that any violation of the bankruptcy laws or other laws of the United States relating to insolvent debtors . . . has been committed, *or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case . . . .*" (emphasis added)

In citing this statute, the Bankruptcy Judge determined that it merely empowered the court to "report" violations of the bankruptcy law but not to "direct" or "request" a criminal investigation. However, paragraph (a) of this section must be read in conjunction with paragraph (b) of section 3057. The latter paragraph provides that the "United States attorney thereupon *shall* inquire into the facts and report thereon to the judge . . . ." 18 U.S.C. § 3057(b) (emphasis added). Thus, a reading of the entire statute leads to the conclusion that a court is compelled to direct the United States Attorney to investigate the facts whenever reasonable grounds exist for a

belief that a violation of the bankruptcy laws has occurred and that such violations have not been litigated before the bankruptcy and appellate courts. *See generally In re Botany Industries, Inc.*, 463 F.Supp. 793 (D.C.Pa.1978), aff'd 609 F.2d 500 (3d Cir. 1979) (hereinafter *"In re Botany"*).

■ This conclusion is supported by section 14(d) of the Bankruptcy Act which provides that "when requested by the court, the United States Attorney . . . *shall* examine into the acts and conduct of the bankrupt and, if satisfied that probable grounds exist for a denial of the discharge and that the public interest so warrants, he shall oppose the discharge of such bankrupt . . . ." 11 U.S.C. § 32(d). Thus, it would appear, after focusing on the above-mentioned statutes, that provided "reasonable grounds" exist, the bankruptcy court does in fact have the authority in effect, to direct an investigation by the United States attorney.[5] *See In re Botany, supra*, 463 F.Supp. at 799.

Next, in finding that there existed no reasonable grounds for believing that violations of the Bankruptcy Act had been committed, the Bankruptcy Judge found that the Bank had failed to produce "any evidence to show that Ronald Parr possessed the requisite fraudulent and/or criminal intent." (*See* Memorandum of Decision by Bankruptcy Court at 9, dated June 16, 1980.) In support of its motion, the Bank itemized forty-four instances in which the Parr's conveyed property "apparently with actual intent" to defraud their creditors. Such instances include the conveyance of the Association's proceeds to Ronald Parr two days after Parr filed his own Chapter XI petition. The Bank alleged that these transfers may have violated 18 U.S.C. § 152 and section 185.10 of the New York Penal Law which prohibits the knowing and fraudulent transfer of any property by a person in contemplation of a bankruptcy

---

**5.** Indeed, courts have viewed the power to direct an investigation as an obligation to protect the rights of the creditors, the dictates of the

bankruptcy laws and the public. *See* 1A *Collier on Bankruptcy* ¶ 14.01 at 1251 (14th rev. ed. 1978).

proceeding by or against him. Here, after an examination of the record, it appears that Parr engaged in numerous conveyances prior to bankruptcy and while in financial distress, and that a disturbing number of those transfers were apparently made to Parr's relatives for nominal consideration.

■■■■ It is well established that a court may infer "intent" from the surrounding facts and circumstances. *See Prisbrey v. Noble*, 505 F.2d 170 (10th Cir. 1974). Accordingly, proof of actual intent need not be based upon direct evidence. *Stubbs v. Hardee*, 461 F.2d 480 (4th Cir. 1972). In addition, it is submitted that the standard of "reasonable grounds" required to initiate an investigation should not be as stringent as that required to believe a crime has in fact been committed. Section 3057(a) specifically mandates action by the court where there is reasonable grounds for belief that a violation of the bankruptcy laws has been committed *or* "that an investigation should be had." *Id.*

■■■ In view of the fact that the requirement of "actual intent" need not be proved directly, *see Prisbrey v. Noble, supra*, at 174–75, and that the suspicious nature of the transfers need only constitute reasonable grounds for investigating whether a crime occurred, it is clear that Judge Hall erred in finding no evidence of intent and no reasonable grounds for seeking an investigation. Thus, this court finds that the factors surrounding the transfers rise to a level of suspicion which constitute reasonable grounds for requiring the bankruptcy court to report the facts to the United States Attorney, thereby initiating an investigation.

■■■■ Finally, the bankruptcy court was correct in its finding that it lacked authority to order an investigation by the Suffolk County District Attorney's Office. No such power is conferred by either the Bankruptcy Act or Title 18. Bankruptcy courts are limited in jurisdiction, *see In re J. M. Wells, Inc.*, 575 F.2d 329 (1st Cir. 1978), and the powers of the bankruptcy court "may only be exercised within the limits of the jurisdiction established by the Bankruptcy Act." *Id.* at 331 (*citing In re Harwald Co.*, 497 F.2d 443 (7th Cir. 1974)).

■■■ Section 2(a)(15) of the Bankruptcy Act is cited by the Bank as support for the proposition that the bankruptcy court has the authority to order the Suffolk County investigation. Bankruptcy Act § 2(a)(15) provides that a bankruptcy court has the power to "make such orders . . . in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act . . ." Case law has clearly established, however, that the powers of the Bankruptcy Court cannot exceed those expressly conferred by Congress and those deemed necessary to effect jurisdiction. *See In re Ross Sand and Gravel, Inc.*, 289 F.2d 311 (6th Cir. 1961) (*per curiam*). Further, the bankruptcy court's authority to act must be found either expressly or impliedly, within the Act itself. *See First State Bank v. Sand Springs State Bank*, 528 F.2d 350, 353 (10th Cir. 1976); *O'Dell v. United States*, 326 F.2d 451 (10th Cir. 1964). Since there is no authority in the Act allowing the bankruptcy court to order an investigation by the Suffolk County District Attorney, the decision below must be affirmed.

Accordingly, the Bankruptcy Court's Order of October 28, 1980 must be reversed in part. The Bankruptcy Court is hereby instructed to enter an order requesting the United States Attorney's Office to conduct a criminal investigation under the auspices of 18 U.S.C. § 3057.

*Conclusion*

In light of the foregoing, this court finds Ronald J. Parr guilty of civil contempt, affirms the Bankruptcy Court's Decision concerning disqualification, and reverses, in part, the Bankruptcy Court's Decision concerning the power to request a criminal investigation.

So Ordered.