LINCOLN PRINTING CO. v. MIDDLE WEST UTILITIES CO.

In re MIDDLE WEST UTILITIES CO.

Equity No. 11654.

Bankruptcy No. 49923.

District Court, N. D. Illinois, E. D.

Dec. 16, 1936.

Taylor, Miller, Busch & Boyden, of Chicago, Ill., for Martin Lindsay, Howland S. Davis, and Harry C. Edmonds, common stockholders' committee.

Cutting, Moore & Sidley, of Chicago, Ill., for C. Frederick Childs, Adolphe Brissevain, Robert Stevenson, and Rawleigh Warner, committee for protection of holders of preferred stock.

William J. Froelich and Burry, Johnstone, Peters & Dixon, all of Chicago, Ill., for Daniel Green, trustee.

Samuel A. & Leonard B. Ettelson, of Chicago, Ill., for Sidney B. Pollak, intervener.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago, Ill., for Charles S. Dewey, George W. Borg, Henry E. Cooper, and J. C. Neff, Marvin Pool, noteholders' committee, and Walter Bachrach, trustee for Commonwealth Light & Power Co., intervener.

Bell, Boyd & Marshall, of Chicago, Ill., for Leonard S. Florsheim, trustee for Inland Power & Light Co., intervener.

Walter V. Fackler, Ross Langdon, Thomas V. Sullivan, and Gannon, McGinn & Whitson, all of Chicago, Ill., for Mandel H. Harris and Ed Cohen, creditors.

James B. Alley, General Counsel, Max O'Rell Truitt, Solicitor, and William Radner, all of Washington, D. C., and Lee Walker, Rex Bullinger, and Arthur A. Armstrong, all of Chicago, Ill., for Reconstruction Finance Corporation, intervener.

Patrick J. Lucey, Weil & Tell, Frank J. Loesch, Tom D. McKeown, and Frank L. Hume, all of Chicago, Ill., for Patrick J. Lucey, intervener.

Tarnopol, Flamm & Sideman, of Chicago, Ill., for A. Homan, S. Isenberg, and J. Gold, interveners.

White & Case, of New York City, for Bankers Trust Co., secured creditor.

Mayer, Meyer, Austrian & Platt, of Chicago, Ill., for Continental Illinois Nat. Bank & Trust Co. of Chicago, First Nat. Bank of Chicago, and Central Republic Trust Co., secured creditors.

Sims & Stransky, of Chicago, Ill., for common stockholders' committee.

Jacobson, Merrick, Nierman & Silbert, of Chicago, Ill., for Theresa Boyle, Alfred Tuvin, and Samuel Goldberg, petitioning creditors.

Schuyler, Weinfeld & Hennessy and Burry, Johnstone, Peters & Dixon, all of Chicago, Ill., for Charles McCulloch and Patrick Hurley, receivers in equity proceeding.

Essington & McKibbin, of Chicago, Ill., for plaintiffs in equity proceeding.

WILKERSON, District Judge.

In the opinion filed on September 29, 1936 (In re Middle West Utilities Co. [D. C.] 17 F.Supp. 359), the court reserved ruling on the applications for allowances for services in the equity suit. Those applications were made by the receiver and his counsel, and by the solicitors for the

complainant, and for the executors of the estate of Edward N. Hurley, one of the co-receivers, who died on November 14, 1933.

Section 77B (i), Bankr.Act (11 U.S.C.A. § 207(i), provides that allowances shall be made in the equity suit and shall be ordered paid in the bankruptcy suit, if they are found to be reasonable by the judge in the latter suit. As both suits are pending in this court it is not necessary that there should be two separate hearings.

At the outset it is to be observed that, by the course of judicial decision, it is established that those who serve as court officers are not to be compensated on the same basis as those who serve in employment by private corporations. A receiver is not to be paid what the president of a corporation would receive for similar services. The receivers' attorneys may not be paid according to the standard of compensation for attorneys for private concerns. As Judge Evans stated in Re Insull Utility Investments (D.C.) 6 F.Supp. 653, 660: "[They have] joined the ranks of those who are public servants, whose compensation never has been and never will be as large as of those engaged in private employment." They can neither expect, nor be paid, more than a moderate compensation. In Re Insull Utility Investments, 74 F.(2d) 510, 516, the Circuit Court of Appeals for this circuit said: "It may be truthfully said that the claims were no larger than others which have been allowed for similar services, in fact there have been many which were much larger. Past custom might well be considered as a matter of justification in filing the claims, but it does not fully answer the merits of the question before us. We think that quite generally allowances to receivers and their counsel have been greatly exorbitant, and that the office of receiver has been made entirely too attractive in this respect. Of course first class men should be paid first class compensation, and the court should seek no others for their receivers. It would be most unfortunate for the courts and the people generally if compensation for such officers were reduced to such an extent as to render the services of capable men inaccessible. If that condition arises it will be corrected, but until it becomes more imminent than it is at present, we feel there is no cause for alarm." See opinion of this court in Re Middle West Utilities Company, 17 F.Supp. 359, filed September 29, 1936, and cases there cited.

The highest compensation approved by the Interstate Commerce Commission and the courts for trustees of railroads who devote their entire time to the duties of that position is $36,000 per annum, and the compensation of attorneys for railroad trustees has been placed on a correspondingly moderate basis.

Samuel Insull, Edward N. Hurley, and Charles A. McCulloch were appointed receivers in the equity suit on April 15, 1932, and were authorized to employ Burry, Johnstone, Peters & Dixon and Schuyler, Dunbar & Weinfeld (now Schuyler, Weinfeld & Hennessy) as their counsel. Mr. Insull resigned on June 7, 1932, and was allowed $8,000 for his services.

On August 6, 1932, there was an order that each of the remaining two receivers have a monthly drawing account of $3,500 from the date of their appointment until the further order of the court, such drawing account to apply on their final compensation when fixed by the court. Under this order Mr. Hurley drew $66,-500 from April 15, 1932, to November 14, 1933, the date of his death. Mr. McCulloch served as sole receiver from November 14, 1933, to July 23, 1934, and after the appointment of the trustee in bankruptcy rendered advisory services in connection with the transfer of the business of the company from the equity receivership to the bankruptcy court. Mr. McCulloch drew $95,550 under the order of August 6, 1932.

On August 10, 1932, each of the firms employed by the receivers was allowed $14,-000 on account of services, such allowance to apply on their final compensation when fixed by the court. An additional allowance on account of $11,000 was made to each of the firms on November 3, 1932, and by order of that date each of the firms was allowed a drawing account of $2,500 per month from November 1, 1932, such drawing account to apply on their final compensation when fixed by the court.

Schuyler, Weinfeld & Hennessy withdrew as attorneys for the receivers on April 30, 1934. They had drawn $67,500 on account. Burry, Johnstone, Peters & Dixon have drawn $77,000 on account of their services in the equity suit. They continued as counsel for the trustee in the bankruptcy suit, and have drawn $40,400 for those services.

Mr. McCulloch requests an additional allowance of $142,450 for his services as

equity receiver. This allowance, if made, would give him a total compensation of $238,000, which is at the rate of $100,000 per year.

Consideration has been given to the fact that Mr. McCulloch served as ancillary receiver without additional compensation in sixteen other jurisdictions, and that he served as director on many of the subsidiaries of the Middle West Utilities Company. This situation, however, is not essentially different from that presented in many railroad receiverships. The high quality of his service is established.

The court's attention has been called to many cases in which allowances have been made to receivers which were comparable with the salaries of the presidents of railroad companies and the chief executive officers of other corporations. The established rule above stated now forbids the court to make allowances on that basis. If Mr. McCulloch had been acting as president of a large corporation, a salary of $100,000 a year, according to the standard generally recognized in the business world, would not have been regarded as excessive; but under the rule which the court is obliged to apply in this case such an allowance cannot be made. The court is of the opinion that an additional allowance of $40,000 is reasonable and proper; and in view of the beneficial character of the service rendered cannot be regarded as excessive.

■ What has been said about the compensation of the receiver applies to the compensation of counsel. The receivers employed two firms of attorneys. Each firm was allowed the same drawing account. It is clear that it was the intention of the court that the receiver should divide the work as nearly equally as possible between the firms.

One of the firms asks an additional allowance of $148,000. The other firm asks an additional allowance, but leaves the amount of such allowance to the judgment

of the court upon the facts stated in its petition.

It is impossible to apportion legal fees upon the basis of time spent. So many much more important elements enter into the determination of what the lawyer has earned that a recital of time spent is of little assistance to the court. The court has gone over the statements of counsel for services in this case very carefully, and is of the opinion that under the rule stated above an additional allowance of $60,000 to both firms of attorneys is reasonable and proper. The court is unable at this time to form an opinion as to the proper division of this amount. That must be done in the first instance by the receiver himself who should report to the court his recommendation. The attorneys acted under his supervision. He knows how the work was divided. He knows the relative importance of the different tasks assigned to the two firms. No one else is in a position to give to the court a sound recommendation as to how this amount shall be divided. When the receiver's recommendation is received, the court will make an order in accordance therewith, unless any of the interested parties wish to take the burden of convincing the court that the receiver's apportionment has been unfair. Of course, if the parties agree upon the division, the recommendation of the receiver will not be necessary.

■ After Mr. Hurley's death, the equity proceeding was attacked on the ground of collusion, and Mr. Hurley's official acts were brought under review. The executors of his estate employed attorneys to represent them in this proceeding, and it is the opinion of the court that the attorneys are entitled to an allowance for their services. The court finds that $3,500 is a reasonable and proper allowance for such services.

■ The court further finds that $10,000 is a reasonable and proper allowance for the services rendered by the counsel for the complainant in the equity proceeding.