**In re CATALINA SPA & R.V. RESORT, LTD., a California Limited Partnership, Debtor.**

**Bankruptcy No. 87–04854–H11.**

United States Bankruptcy Court, S.D. California.

Feb. 7, 1989.

---

Estes & Hoyt, San Diego, Cal., for Gordon A. Jacobs.

Robert L. Rentto, San Diego, Cal., for Michael D. Alexander.

Luce, Forward, et al. (Mann), San Diego, Cal., for Wilford D. Willis, trustee.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

Presently pending is the application of Estes & Hoyt, A.P.C. ("applicant") for allowance of fees and reimbursement of costs. The applicant is counsel for general partner and unsecured creditor Gordon A. Jacobs ("Jacobs"). At issue is whether applicant is entitled to compensation for attorneys' fees and costs pursuant to § 503(b)(3)(D) and (4) of the Bankruptcy Code. Applicant contends that its participation on behalf of Jacobs, in the litigation which resulted in the appointment of a trustee and the other services provided, rendered a substantial contribution in this case entitling applicant to an administrative expense for professional services rendered. Objections have been filed by: the debtor; secured creditors Levin & Menzies, and Michael Alexander Development, Inc.; by managing general partner Michael D. Alexander; by the Chapter 11 trustee, Wilford D. Willis; by secured and unsecured creditor Hidden Valley National Bank; by unsecured creditor Lake Francis; and by limited partners Kalina Family Trust, Thomas Taylor, and Evan M. Stone.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157 and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## FACTS

On July 6, 1987, Catalina Spa & R.V. Resort, Ltd. ("debtor") filed with this court its voluntary petition for relief pursuant to the provisions of Chapter 11 of Title 11, of the United States Code. Applicant commenced its representation of Jacobs, as his attorneys in these proceedings, on July 15, 1987, the date on which professional services were first rendered. Jacobs is one of three general partners of the debtor. Michael D. Alexander ("Alexander") and Howard Carpenter are the other general partners.

After the filing of the Chapter 11 bankruptcy proceeding, general partners Alexander and Jacobs became embroiled in state court litigation regarding another partnership in which Jacobs and Alexander were partners. In response to the state court litigation initiated by Alexander, Jacobs sought and obtained the appointment of a receiver in the state court litigation. On September 10, 1987, Jacobs sought the appointment of a trustee in the above-entitled bankruptcy proceeding.

On October 2, 1987, this court granted Jacobs' motion and entered its order appointing Wilford D. Willis the Chapter 11 trustee for debtor.

On October 20, 1987, applicant filed its first application for interim compensation and reimbursement of attorneys' fees and costs. On January 19, 1988, this court took under submission the matter of the application for interim compensation filed by applicant. In its Memorandum Decision of March 18, 1988, the court concluded that it would be premature to render a decision at that time on the pending interim applications and deferred awarding any compensation requested by applicant until consideration at a final fee hearing in this case involving all administrative claims. The court was unable at that time to determine whether the services rendered by applicant had resulted in a substantial contribution to the case.

On May 27, 1988, applicant filed its application for final compensation and reim-

bursement of expenses. Applicant's original final application seeking compensation of $22,966 in fees and reimbursement of costs of $1,588.87 covers services rendered by applicant from July 15, 1987 to September 30, 1987. The trustee has agreed to withdraw any opposition to that application. On October 12, 1988, applicant filed its supplement to application for final compensation and reimbursement of expenses requesting additional compensation in the amount of $13,236 and reimbursement of expenses in the amount of $222.40. The supplement encompasses the time period from October 1, 1987 through November 2, 1988. Applicant also requested interest pursuant to 11 U.S.C. § 726(a)(5).[1] The total request for compensation amounts to $36,202 and reimbursement of expenses of $1,811.27.

## DISCUSSION

Applicant asserts a right to reimbursement for all attorneys' fees and costs performed at the request of Jacobs. Section 503 provides in pertinent part:

> "(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> * * * * * *
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> * * * * * *
>
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; . . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose

expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant; . . . ."

Applicant asserts that it made a substantial contribution on behalf of Jacobs through its involvement in six definable areas:

(1) Its time spent directly in involvement in the reorganization process, including conferences with the managing general partner, the debtor's counsel, the official creditors committee and other parties in interest, as well as related investigatory activities, where all such activities directly related to the reorganization process and solving of the myriad creditor problems of the debtor;

(2) Its efforts in connection with the trustee's motion, including investigation, discovery, preparation of court papers, and representation at court and related matters;

(3) Its opposition to the matter of the "priming loan";

(4) Its efforts in successfully opposing the debtor's assumption of a lease in favor of insider Michael D. Alexander;

(5) Its efforts in conjunction and cooperation with the trustee and his counsel; and

(6) Its time expended in preparing and presenting its application for compensation, and the application for compensation of Charles Breese.[2]

Section 503(b) of the Bankruptcy Code is derived from Bankruptcy Act §§ 242 and 243. While there was no provision for compensation comparable to § 503 of the Code under former Chapter XI of the Bankruptcy Act, comparable provisions did exist under former Chapter X. Compensation provisions in Chapter X were created to encourage greater participation by individual

---

1. Applicant stated in open court on November 2, 1988, that it would waive its claim for interest on its unpaid balance of the attorneys' fees.

2. Breese was a financial auditor who testified as an expert witness on behalf of Jacobs. The court awarded $1,762.50 as compensation to Breese.

creditors and committees. *In re Rockwood Computer Corp.*, 61 B.R. 961, 964 (Bankr. S.D.Ohio 1986). *See,* 6A *Collier on Bankruptcy* para. 13.01 (14th ed. 1977). Two provisions of Chapter X provided for compensation of professionals. Section 242 allowed the judge to award "reasonable compensation for services rendered." Section 243 limited compensation to services which contributed to a confirmed plan or refusal of a plan or which generally benefited the estate. *Rockwood,* 61 B.R. at 965.

> As the case law developed, distinctions came to be made as to when compensation was allowable by the court under §§ 242 and 243. Thus, no allowance would be made where the service for which compensation was sought was rendered 'primarily in the sole interests of the particular individual or group represented' ... [citation omitted]. Nor was claimant 'entitled to an allowance for activity where the activity amounts to the performance of some function or duty of the trustee, debtor-in-possession, or other officer of the estate' ... [citation omitted]. It was said that then the claimant was a mere volunteer.

*Rockwood,* 61 B.R. at 965. *See also,* 6A *Collier on Bankruptcy* para. 13.06(b) at p. 585 (14th ed. 1977).

With respect to the pending applications, the applicant can prevail only if it has established that the work made a substantial contribution in this case. The words "substantial contribution" are derived from Chapter X. *In re Calumet Realty Company,* 34 B.R. 922, 925 (Bankr.E.D.Pa.1983); *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 566 (Bankr.D.Utah 1985). Substantial contribution has been defined as

> "Services ... which foster and enhance, rather than retard or interrupt the progress of reorganization.... Those services which are provided solely for the client-as-creditor, such as those services rendered in prosecuting a creditor's claim, are not compensable. [Compensable services] are those which facilitated the progress of these cases...."

*In re Paolino,* 71 B.R. 576, 579–80 (Bankr. E.D.Pa.1987) quoting *In re Richton International Corporation,* 15 B.R. 854, 856 (Bankr.S.D.N.Y.1981).

> Put another way, services must provide a 'demonstrable benefit to the debtor's estate, [or] the creditors, ...' in order to be compensable.

*In re Paolino,* 71 B.R. at 580.

An incidental benefit is not a sufficient basis to grant an administrative priority. *Matter of Patch Graphics,* 58 B.R. 743, 746 (Bankr.W.D.Wis.1986). In addition to the requirement that the creditor show that the services rendered a significant and demonstrable benefit, an administrative expense may not be allowed absent a finding that the expense is necessary for preserving the estate. *In re Club Development & Management Corp.,* 27 B.R. 610, 612 (9th Cir.BAP 1982).

Since an administrative expense constitutes a priority claim, any recovery must be subject to strict scrutiny by the court. Priority statutes are strictly construed. *Standard Oil Company v. Kurtz,* 330 F.2d 178, 180 (8th Cir.1964). The burden of proof is on the party making the administrative claim. *Patch Graphics,* 58 B.R. at 745. The terms "actual" and "necessary" must be narrowly construed in order to preserve the estate. As such, the movant bears a heavy burden in requesting compensation under § 503(b).

> While 'substantial contribution' does not require a contribution that leads to confirmation of a plan the phrase clearly requires a contribution which provides tangible benefits to the bankruptcy estate and the other unsecured creditors. Thus to the extent that the 'substantial contribution' requirement adds anything to the requirements discussed previously, it is to increase the burden of proof which a claimant for administrative expense must bear.

*Patch Graphics,* 58 B.R. at 746.

In considering this motion, the court must balance two policy considerations. The first is that entities should be encouraged to participate in the reorganization of an insolvent company. The second is that creditors' interests in the estate as well as the estate itself should be preserved by

scrutinizing administrative expenses. *In re Seneca Oil Co.*, 65 B.R. 902, 905–06 (Bankr.W.D.Okla.1986).

Turning to the Jacobs' claim, the services rendered by counsel for Jacobs were primarily for the individual benefit of Jacobs. Furthermore, many of the services rendered satisfied neither the substantial contribution nor the actual and necessary requirements of § 503(b).

*Reorganization Process.*

■ The first area for which applicant requests compensation is for its general participation in the reorganization process. Applicant expended 18.7 hours for a fee of $2,920 in this area. This area includes an initial review and legal analysis of the debtor's schedules, statement of business affairs, loan documentation and other transactional documents; the rendering of legal advice and consultation to Jacobs concerning various matters related to the operation of the debtor's business; preparing for and attending a meeting with Michael Alexander and Tim Kelley, attorney for the debtor, to discuss the direction of the Chapter 11 proceeding; reviewing the debtor's applications to employ professional persons; preparing for and attending the first meeting of creditors; and conducting numerous telephone conversations with attorneys for parties in interest regarding the status of the Chapter 11 case. While there can be no doubt that such participation does make a contribution, these actions are both self-interested and duplicative. There were numerous other participants in these proceedings, all of which made similar contributions. Extensive participation, alone, is not sufficient to compel compensation under § 503(b). *In re Ace Finance Company*, 69 B.R. 827 (Bankr.N.D.Ohio 1987). Therefore, the sum of $2,920 is disallowed.

*Appointment of Trustee.*

The next area for which applicant seeks compensation is for its role in connection with the motion to appoint a trustee. This area includes holding numerous conferences and meetings with Mr. Breese and Mr. Dunlap, financial auditors, to analyze Mr. Alexander's relationship with the debtor; preparation of a declaration of Mr. Breese with accompanying exhibits; holding numerous conferences with Mr. Jacobs; preparation of a declaration of Mr. Jacobs; researching issues surrounding the appointment of a trustee; preparing the notice of motion and serving all creditors and parties in interest; preparing a memorandum of points and authorities in support of the motion; attending the depositions of Mr. Breese, Mr. Jacobs, and Mr. Alexander; conferring with attorneys for Mr. Alexander and the debtor regarding alternatives to the motion for a trustee; preparing for and attending the hearing on the motion to appoint a trustee; and preparing and lodging the order appointing the trustee. Applicant expended 130.7 hours for a fee of $16,231 in connection with this motion.

The objections to fees for this area generally fall into three categories: 1) That there was no recognizable benefit from applicant's motion for appointment of a trustee; 2) the sum claimed constitutes excessive and unreasonable compensation; and 3) that the action was brought exclusively to benefit Jacobs individually.

■ Applicant argues that the appointment of a trustee had a significant and positive impact on the estate which resulted in "tangible benefits to the estate." *In re 1 Potato 2, Inc.*, 71 B.R. 615, 618 (Bankr.D.Minn.1987). Applicant further argues that the fact that Jacobs, as a creditor, incidentally benefited from the appointment of a trustee does not taint the substantial contribution of appointing the trustee.

Under the particular facts of this case, the court finds that the appointment of a trustee made a substantial contribution to this bankruptcy case under § 503(b)(3)(D). The appointment of a trustee was a significant event which has contributed to the progress of this case and the forthcoming dismissal after a successful liquidation. The determination of substantial contribution must be made on a case by case basis. The court declines to set down a broad rule which states that the appointment of a trustee would always make a substantial contribution. Although the objecting par-

ties claim that Jacobs was merely seeking to gain leverage and benefit individually from the appointment of a trustee, the court disagrees with this characterization.

■ Once the court determines that there has been a substantial contribution as a result of the motion to appoint trustee, it does not automatically follow that applicant is entitled to be compensated for all the hours it expended in connection with the motion to appoint trustee. The court finds that the objections to the reasonableness of compensation are well taken.

Determination of compensable administrative expenses is within the discretion of the bankruptcy court. *In re Verco Industries*, 20 B.R. 664, 665 (9th Cir.BAP 1982). The court in *In re Texaco, Inc.*, 90 B.R. 622, 631 (Bankr.S.D.N.Y.1988) set forth the following factors which must be considered when assessing the reasonableness of fees:

(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to the acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The undersirability of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.

■ The time spent in connection with the appointment of a trustee can be broken down into the following categories:

Legal research re appointment of a trustee—25 hours

Reviewing, analyzing and revising documents—19.4 hours

Preparation of pleadings and documents—33.6 hours

Preparing for and attending court hearings—4.8 hours

Conferences—18.8 hours

Telephone conferences—6.4 hours

Preparing for and attending depositions—22.1 hours

This court, after reviewing all of the pleadings and applicant's time sheets, concludes that the time spent in research was excessive and that research on the grounds to appoint a trustee should have only taken at most 10 hours.[3] The court also concludes that the motion was in essence overprepared. While the motion did in fact result in the appointment of a trustee which resulted in benefit to the estate, the court concludes that the time spent in conjunction therewith was excessive and, accordingly, will allow only 60 hours in this regard (18 hours at $160 per hour and 42 hours at $140 per hour).[4] The court also allows 10 hours at $45 per hour for research as there was nothing complex to research. The total compensation allowable in connection with the motion to appoint trustee is $9,210.

*Priming Loan.*

■ The third area for which applicant requests compensation is for its efforts in connection with the priming loan. This area includes reviewing the pleadings filed by the debtor in support of approval of the priming loan; researching the effect of a principal's authority to bind the debtor if the partnership was in dissolution; preparing a memorandum of points and authorities in opposition to the priming loan; reviewing and analyzing opposition to the priming loan; and preparing for and attending the two hearings. Applicant expended 29.7 hours for a fee of $3,773 in connection with the priming loan. When a creditor incurs expenses primarily to protect its own interest the creditor is not

---

**3.** Applicant is a very experienced bankruptcy firm and has and is representing bankruptcy trustees in numerous complex cases. The novelty and difficulty of the questions surrounding the appointment of a trustee are not such that 25 hours of research are required or are justified.

**4.** A review of the time sheets indicates that approximately 30% of the services in connection with this motion were performed at $160 per hour and 70% at $140 per hour.

entitled to a priority administrative claim. *Matter of Patch Graphics,* 58 B.R. 743, 746 (Bankr.W.D.Wis.1986). Jacobs withdrew his opposition to the priming loan after securing a release from a personal guarantee. It is clear to this court that this was a self-interested action designed to protect Mr. Jacobs' position as an interested creditor of the estate for which compensation is not available.

*Lease Assumption.*

■ The fourth area in which Jacobs claims to have benefited the estate is the filing of an opposition to the debtor's assumption of a sublease. Applicant expended .3 hours for a fee of $42 in connection with this opposition. Applicant has not demonstrated how its particular efforts substantially contributed to the outcome of the lease assumption, and as such, no compensation can be awarded.

*Cooperation with Trustee.*

■ The fifth area in which applicant claims that it benefited the estate is its efforts in conjunction and cooperation with the trustee and his counsel. This area includes preparing pleadings and documents for the trustee to review; preparing for and attending hearings regarding the sale of Catalina Spa; reviewing a declaration in opposition to a motion to dismiss the bankruptcy proceeding; preparing opposition to the motion to dismiss; and attending the hearing regarding the motion to dismiss. Applicant expended 23.4 hours for a fee of $3,633.50 in connection with these services. The applicant's participation in these various services duplicated the efforts of the trustee, were unnecessary, were designed to protect Jacobs' self interest and did not substantially contribute to the bankruptcy proceeding. Therefore, these services are noncompensable.

*Fee Application.*

Finally, applicant seeks compensation for preparing and presenting its application for compensation, and the application for compensation of Charles Breese. This area includes researching the Bankruptcy Code

regarding compensation for substantial contribution to the estate; preparing the application for compensation; preparing the expert witness application for compensation; reviewing and analyzing all opposition to the applicant's fee application; preparing for and attending several hearings on applicant's fee application; preparing additional documentation for in camera inspection by the court; preparing the supplement to the fee application; and attending the final hearing on all fee applications. Applicant expended 80.5 hours for a fee of $9,602.50 in connection with their fee applications.

■ The threshold issue which must be addressed is the compensability of time spent preparing and prosecuting the applications. There is a definite split of authority on the issue. *In re The Vogue,* 92 B.R. 717 (Bankr.E.D.Mich.1988). The Ninth Circuit in *In re NuCorp Energy, Inc.,* 764 F.2d 655 (9th Cir.1985) held that preparing a fee application for fees under § 330 constitutes actual and necessary services compensable under the Bankruptcy Code.

In *NuCorp,* attorneys for debtor were awarded compensation pursuant to § 330(a)(1) after the bankruptcy court authorized their employment as counsel to the debtors-in-possession. The bankruptcy court, affirmed by the district court, had denied the law firm compensation for the preparation and presentation of the fee applications on the grounds that "as a matter of appropriate professional and public policy" such services ought not be compensable. *NuCorp,* at 657. The court of appeals reversed, holding that "bankruptcy counsel are entitled to compensation for the time and effort spent in preparing fee applications." *NuCorp,* at 662. It is not clear whether "bankruptcy counsel" refers only to counsel whose employment is authorized by the court and which are seeking compensation under § 330, or whether it extends to attorneys seeking compensation pursuant to § 503(b).

The *NuCorp* court recognized that "debtors' counsel are required to maintain and present to the bankruptcy court meticulously accurate time records of all servic-

es rendered to the estate as a necessary prerequisite to the recovery of attorneys' fees." Likewise, attorneys seeking compensation under § 503(b) are required to submit detailed time records to enable the court to determine the reasonableness of fees incurred in rendering a substantial contribution to the estate.

At least one court has allowed compensation for the preparation of a fee application in connection with an application for fees under § 503(b). The court in *In re W.G.S. C. Enterprises, Inc.*, 47 B.R. 53 (Bankr.N. D.Ga.1985) held that the preparation of the fee application required the application of legal knowledge and expertise rather than solely being an administrative function.

As an attorney seeking fees under § 503(b) must apply to the court in the same manner as an attorney under § 330, this court cannot reasonably justify a different treatment for purposes of compensation for fee applications. Following the reasoning set forth in *NuCorp*, counsel for a creditor seeking compensation under § 503(b) are entitled to reasonable compensation for the time and effort spent in preparing the fee application, but only upon a finding of the court of "substantial contribution" for the underlying services.

Attorneys are entitled to reasonable compensation for efforts expended to prepare and present fee applications to the extent that they represent an additional burden imposed on the professionals by the Code. *In re Seneca Oil Co.*, 65 B.R. 902, 910 (Bankr.W.D.Okla.1986).

██ The time spent by applicant in connection with the fee applications can be broken down into the following categories: [5]

| | |
|---|---|
| Legal Research of Code | 3.6 hours |
| Review and Analysis | 2.9 |
| Conferences | 1.8 |
| Telephone Conferences | .7 |
| Preparation and Review of Application | 38.4 |

| | |
|---|---|
| Review, Analysis, Reply Re Opposition | 17.4 |
| Prepare For and Attend Hearings | 7.7 |
| Breese Application | 8.0 |

Some courts have held that in the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee application should not exceed three percent of the total hours in the main case. *In re Wildman*, 72 B.R. 700, 711 (Bankr.N.D.Ill.1987). The rationale behind such a limitation is to ensure that such compensation will not be disproportionate to the main case. Here, applicant expended 202.8 hours in the main case, not including the hours connected to the fee applications. The 80.5 hours on the fee applications represents approximately 40% of the hours in the main case and 28% of all hours expended in this case by applicant for which it seeks compensation. While there was heavy opposition to this fee application, circumstances do not justify an award of approximately $9,600 for its preparation. This court finds that 20 hours for a fee of $2,362 (6.8 hours at $60 per hour, 6.6 hours at $140 per hour, 2.6 hours at $150 per hour, and 4 hours at $160 per hour) is a reasonable award for the services provided in connection with the fee application.[6]

Compensation cannot be freely given to all creditors who take an active role in bankruptcy proceedings, rather, it must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate. The integrity of § 503(b) can only be maintained by strictly limiting compensation to extra ordinary creditor actions which lead directly to significant and tangible benefits to the creditors, debtor, or the estate. While § 503 was enacted to encourage meaningful creditor participation, it should not become a vehicle for reimbursing every creditor who elects to hire an attorney.

---

**5.** Many of the services were impermissibly lumped making it impossible for the court to accurately categorize the services, or determine their reasonableness. *In re Wildman*, 72 B.R. 700, 709 (Bankr.N.D.Ill.1987).

**6.** A review of the time sheets indicates that approximately 34% of the services in connection with the fee application were performed at $60 per hour, 33% at $140 per hour, 13% at $150 per hour and 20% at $160 per hour.

22

*Expenses.*

█ Bankruptcy Code § 503(b)(4) provides that the court may award to an attorney of an entity whose expense is allowable under § 503(b)(3)(D) "reimbursement for actual, necessary expenses incurred by such attorney." "Whether an expense is necessary is conditional on whether the item for which the expense was incurred was reasonably needed to accomplish proper representation of the client". *In re Wildman,* 72 B.R. 700, 731 (Bankr.N.D.Ill. 1987).

Applicant seeks reimbursement of expenses reasonably and necessarily incurred in the amount of $1,811.27. No separate summary of expenses is provided, rather the expenses are itemized at the end of the description of services for each month. Further, the applicant did not specifically identify the expenses incurred for each of the six areas for which compensation is sought. As such, the court is unable to make an accurate determination of the reasonableness of the expenses.

█ It appears, however, from a review of the time sheets that the services performed in connection with the motion to appoint a trustee were performed in the month of September 1987. Most of the hours billed in that month were in connection with the motion to appoint a trustee. Applicant advanced $1,350.37 in expenses on behalf of Jacobs in that month. Therefore, as the court only allowed 54% of the hours expended in connection with the motion to appoint trustee, only 54% of the expenses or $730 shall be allowed in light of the fact that applicant made no clearer showing of why these expenses were incurred. The court is unable to determine the expenses associated with the fee application and disallows expenses in that regard.

## CONCLUSION

On its application for fees and expenses $11,572 is allowed and awarded to applicant as compensation and $730 is allowed and awarded as reimbursement for expenses. The balance requested is disallowed.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankr.R. 7052. Applicant is directed to file with this court an appropriate Order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.