In re William J. STOECKER, Debtor.

Bankruptcy No. 89 B 02873.

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 21, 1991.

Thomas Raleigh, Raleigh & Helm, Chicago, Ill., Trustee.

Robert Radasevich, Neal, Gerber & Eisenberg, Chicago, Ill., for the Trustee.

Michael P. O'Neil, Winston & Strawn, Chicago, Ill., for New Connecticut Bank and Trust N.A.

John D. Lien, Foley & Lardner, Chicago, Ill., for Beverly Bank.

James A. Cherney, Latham & Watkins, Chicago, Ill., for Citibank, N.A.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on the application of New Connecticut Bank & Trust, N.A. ("CBT") by its attorneys Winston & Strawn ("W & S") pursuant to 11 U.S.C. § 503(b)(4) for fees in the amount of $37,702.00 and reimbursement of expenses in the sum of $500.00, for the period January 31, 1989 through March 13, 1989, in connection with the filing of the involuntary Chapter 11 case against the Debtor and the appointment of a trustee. For the reasons set forth herein, the Court having reviewed the pleadings and the exhibits attached thereto, and having heard the arguments of counsel, hereby authorizes payment of fees to W & S in the amount of

$23,576.00 and authorizes reimbursement of expenses in the sum of $500.00.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this fee application pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

Some of the facts, background and history of this case are contained in earlier Opinions of the Court. *See In re Stoecker*, 118 B.R. 596 (Bankr.N.D.Ill.1990); *In re Stoecker*, 114 B.R. 965, 967–968 (Bankr.N.D.Ill.1990); *In re Stoecker*, 103 B.R. 182, 184–185 (Bankr.N.D.Ill.1989). Additional background information concerning the related corporate cases is contained in other Opinions of the Court. *See In re Grabill Corp.*, 110 B.R. 356, 358 (Bankr.N.D.Ill. 1990); *In re Grabill Corp.*, 103 B.R. 996, 997–998 (Bankr.N.D.Ill.1989).

On February 21, 1989, CBT, Beverly Bank and LaSalle Bank Lakeview commenced an involuntary Chapter 11 petition against the Debtor pursuant to 11 U.S.C. § 303. Thereafter, on March 8, 1989, after a full evidentiary hearing, the Court ordered the appointment of a trustee. Subsequently, on March 14, 1989, because the Debtor failed to file a responsive pleading to the petition, the Court entered an order for relief. The United States Trustee appointed Thomas E. Raleigh, as trustee (the "Trustee") on March 20, 1989.

The instant application was filed on March 11, 1991, to which Citibank, N.A. ("Citibank") lodged several objections. On April 11, 1991, the Court scheduled the evidentiary hearing on the application and objection. Neither party offered testimonial evidence. W & S offered various documentary exhibits consisting of case pleadings and prior orders, and proffered the testimony of Gerald Munitz, a member of the firm of W & S who was unable to testify because of illness. The proffer of testimony included six points raised in the application: 1) W & S experienced great difficulty in obtaining two other petitioning creditors to join in the filing of the involuntary petition; 2) W & S had to persuade Beverly Bank to join as a petitioning creditor because Citibank would not join; 3) there were allegations of fraud in the related cases compelling W & S to handle "press relations"; 4) W & S's unique knowledge kept the case moving in February and March, 1989 until the Trustee was appointed; 5) W & S's efforts inured to the benefit of all creditors; and 6) W & S's efforts resulted in a substantial contribution to the case. The Court allowed W & S to supplement the application which contained many "lumped" entries. Accordingly, a supplement was filed on May 2, 1991.

The Trustee did not object to the fees requested because the services were performed prior to his appointment. He did, however, have several comments with respect to the application. Counsel for the Trustee indicated instances of more than one W & S attorney appearing in court at the same hearing. In addition, he noted various inter-office conferences among several members of W & S.

Citibank objects to the application on several grounds. First, although Citibank concedes that the involuntary petition and the appointment of the Trustee benefited the estate, it asserts that allowance of the application could trigger similar requests from the other petitioning creditors, and the fees and expenses requested were incurred primarily for CBT's own benefit. Second, a great deal more is sought in fees than just for the preparation and filing of the involuntary petition. Among the services Citibank objects to are W & S's time expended for: 1) press inquiries; 2) conferring with other creditors; 3) attempting a pre-bankruptcy workout; 4) preparing a demand letter to the Debtor; and 5) developing a list of candidates for the trustee position acceptable to CBT.

Third, Citibank objects to additional time expended by W & S on the motion relating to the appointment of a trustee. Citibank claims that fifty percent of the fees sought in the application relate to this work. Citi-

bank argues that while CBT did participate in the contested motion to persuade the Court to order the appointment of a trustee, other creditors played a more significant role and incurred greater expenses. Citibank submits that CBT's efforts in the hearing merely resulted in the introduction of two financial statements which were not outcome determinative.

Fourth, Citibank alleges that CBT's role in the selection of a particular trustee was motivated by its own self-interests and strategy. In short, Citibank recommends that the Court completely disallow the fees and expenses requested. In the alternative, Citibank recommends compensation be limited to a lesser sum: $4,454.50 which Citibank computes to be attributable to W & S's investigation, drafting and filing of the involuntary petition; and possibly some of W & S's work in obtaining the Trustee's appointment in the sum of $11,255.30, or a total of $15,709.80. Citibank concludes that CBT has not met its burden of proof under section 503(b)(4).

### III. APPLICABLE STANDARDS

11 U.S.C. § 503(b)(3) and (4) provides in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> > (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
> >
> > (A) a creditor that files a petition under section 303 of this title;
> >
> > ....
> >
> > (D) a creditor ... in making a substantial contribution in a case under chapter ... 11 of this title;
>
> > .    .    .    .    .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. §§ 503(b)(3)(A), (D) and 503(b)(4). W & S's client, CBT, was a petitioning creditor as provided in section 503(b)(3)(A) and made a substantial contribution under section 503(b)(3)(D). Thus, W & S as CBT's attorneys have applied for compensation under section 503(b)(4).

■ Priority statutes such as section 503 are to be strictly construed to keep administrative expenses at a minimum so as to preserve the estate for the benefit of the creditors. *See In re Sinclair*, 92 B.R. 787, 788 (Bankr.S.D.Ill.1988); *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 121 (Bankr.S.D.N.Y.1982). The burden of proving entitlement to an administrative expense is on the claimant and the standard of proof is a preponderance of the evidence. *Sinclair*, 92 B.R. at 788; *In re 1 Potato 2, Inc.*, 71 B.R. 615, 618 (Bankr.D.Minn.1987); *In re S & T Industries, Inc.*, 63 B.R. 656, 657 (Bankr.W.D.Ky.1986).

■ Claims should be granted administrative priority status only if the claim comports with the language and underlying purposes of section 503. *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984); *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 658 F.2d 1149, 1163 (7th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982) (general rule is equality of distribution; deviation must appear in the statute). In order to qualify as "actual" and "necessary" administrative expenses, expenditures must benefit the estate as a whole rather than just the creditor claimant. *In re Jartran, Inc.*, 886 F.2d 859, 871 (7th Cir.1989); *In re Jartran, Inc.*, 71 B.R. 938, 945 (Bankr.N.D. Ill.1987), *aff'd*, 886 F.2d 859 (7th Cir.1989); *see also In re Patch Graphics*, 58 B.R. 743, 746 (Bankr.W.D.Wis.1986); *In re McK, Ltd.*, 14 B.R. 518, 520 (Bankr.D.Colo.1981). The language of section 503 continues the rule under the former Bankruptcy Act that a creditor's right to payment will be afforded priority only to the extent the estate

was benefited in fact from the consideration supporting the creditor's claim. *See In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976); *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119 (2nd Cir.1960).

"Applications filed under section 503(b)(3) must be scrutinized carefully for they are filed after the services are performed, yet without prior court approval and, sometimes, knowledge." *In re Traverse City Ltd. Partnership,* 108 B.R. 648, 649 (Bankr.N.D.Ill.1989), citing *In re Food Workshop, Inc.,* 70 B.R. 962, 967–968 (Bankr.S.D.N.Y.1987). Section 503(b)(3)(A) and (b)(4) allows for compensation and expense reimbursement for the preparation, filing and adjudication of an involuntary petition. *See In re Crazy Eddie, Inc.,* 120 B.R. 273, 278 (Bankr.S.D.N.Y.1990); *In re Hanson Industries, Inc.,* 90 B.R. 405, 410 (Bankr.D.Minn.1988).

■ The requirements pursuant to 11 U.S.C. § 330 for documenting how time was expended are applicable to fee applications under section 503(b) as well. *In re Baldwin–United Corp.,* 79 B.R. 321, 336 (Bankr.S.D.Ohio 1987); *In re Paolino,* 71 B.R. 576, 581 (Bankr.E.D.Pa.1987). As one noted authority has stated with respect to the applicability of section 330 to section 503(b)(3) and (4):

> [T]o the extent that a creditor under section 503(b)(3)(A) is entitled to the recovery of the actual, necessary expenses incident to the filing of an involuntary petition under section 303, it follows that the professional services contemplated by section 503(b)(4) would be those leading to the entry of an order for relief in a liquidation case under chapter 7 or in the success of a reorganization case begun as an involuntary case under chapter 11. (footnote omitted). It is important to observe the integration in section 503(b)(4) of the standards of section 330(a)(1) applicable to professional services rendered to the trustee and for which compensation is sought. (footnote omitted). The legislative comments to section 330 are surely applicable here. (footnote omitted).

3 *Collier on Bankruptcy,* ¶ 503.04[4] at 503–51 (15th ed. 1991).

The principal controlling statutory authority for the award of attorney compensation and reimbursement of expenses is 11 U.S.C. § 330(a)(1) and (2) which provides as follows:

§ 330. Compensation of officers.

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

> (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
>
> (2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1) and (2).

Pursuant to Section 330 of the Bankruptcy Code, all professionals applying for fees must demonstrate that their services were actual, necessary and reasonable. The legislative history of section 330 expressly notes the Court's correlative duty to closely examine the reasonableness and necessity of the fees incurred. Bankruptcy Rule 2016(a) in turn requires that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016(a).

■ The burden of proof to show entitlement to the fees requested is on W & S. *In re Pettibone Corp.,* 74 B.R. 293, 299

(Bankr.N.D.Ill.1987); *In re Lindberg Products, Inc.,* 50 B.R. 220, 221 (Bankr.N.D.Ill. 1985). Moreover, fee applications must stand or fall on their own merits. *See In re Wildman,* 72 B.R. 700 (Bankr.N.D.Ill. 1987). Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and in fact, has a duty to independently examine the reasonableness of the fees. *In re Chicago Lutheran Hospital Ass'n,* 89 B.R. 719, 734–735 (Bankr.N.D.Ill.1988); *In re Wyslak,* 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *Pettibone,* 74 B.R. at 299–300; *In re NRG Resources, Inc.,* 64 B.R. 643, 650 (W.D.La. 1986). Fees are properly payable out of estate assets when a commensurate benefit to the estate is provided. *See In re Ryan,* 82 B.R. 929, 931–932 (N.D.Ill.1987); *In re Rhoten,* 44 B.R. 741, 743 (Bankr.M.D.Tenn. 1984). Judge Grady in *Ryan* stated, "all the decisions interpreting § 330 of the Bankruptcy Code carry over the near-unanimous view of prior Bankruptcy Act cases that, as a matter of law, attorneys may recover fees from the estate only if their labors actually benefited the estate." *Id.* at 931 (citations omitted).

Several courts have listed other factors to be considered when reviewing fee applications. These other factors are set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The twelve *Johnson* factors have been considered by the Court with respect to the instant application and are as follows: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Id.* at 717–719.

Many courts have held that fees incurred that are unnecessary or excessive will not be allowed. *See In re Gherman,* 114 B.R. 305 (Bankr.S.D.Fla.1990) (the court should reduce excessive fees); *In re ICS Cybernetics, Inc.,* 97 B.R. 736, 739–740 (Bankr.N. D.N.Y.1989). The Court has a duty to ensure that an attorney has exercised a "good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary." *In re Metro Transp. Co.,* 107 B.R. 50, 52 (E.D. Pa.1989) citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (non-bankruptcy case); *see also In re Yankee Seafood Corp.,* 53 B.R. 285 (Bankr.D.R.I.1985); *In re Liberal Market, Inc.,* 24 B.R. 653 (Bankr.S.D.Ohio 1982). "[F]ees generally are especially subject to the supervisory power of the court, which will not permit its officers to obtain excessive fees that unreasonably diminish an estate." *In re J.M. Wells, Inc.,* 575 F.2d 329, 331 (1st Cir.1978).

"If the court finds that the attorney's fee request oversteps the bounds of the 'actual and necessary' standard imposed by Section 330(a)(1), the Bankruptcy Court is within its discretion to act as client and object to the excessive fees." *In re Paster,* 119 B.R. 468, 470 (E.D.Pa.1990). Several courts have reduced fees for being excessive. *See In re Lee,* 884 F.2d 897, 900 (5th Cir.1989) (bankruptcy court finding that a portion of an attorney's fee was excessive was affirmed); *In re Beverly Crest Convalescent Hospital, Inc.,* 548 F.2d 817, 821 (9th Cir.1976) (even if efforts were highly successful, fees must be reduced when excessive); *In re R & B Institutional Sales, Inc.,* 65 B.R. 876 (Bankr.W. D.Pa.1986) (fees and hourly rates of counsel for the committee of unsecured creditors reduced); *In re Sutherland,* 14 B.R. 55, 58 (Bankr.D.Ver.1981) (court disallowed fees for excessive time that was ill-spent). Unless services performed produce a demonstrable benefit to the estate, the Court will not award compensation. Billable hours are not necessarily compensable hours. The Court is willing to award fees for diligence, experience, skill and results. The result obtained is a major factor under *Johnson* in awarding professional fees.

In addition to seeking fees for the services performed for the preparation and filing of the involuntary petition, W & S seeks fees for the work performed in connection with the appointment of the Trustee. Citibank would have the Court strictly construe section 503(b)(4) to allow, at most, compensation and expenses incurred by W & S relating solely to the preparation and filing of the involuntary petition as described in section 503(b)(3)(A), and some of the work leading to the appointment of the Trustee under section 503(b)(3)(D). W & S effectively counters that all their efforts for CBT should also be considered under section 503(b)(3)(D) because their other work provided a substantial contribution in the case, especially regarding the appointment of the Trustee.

■ After review of the evidence and various cited authorities, the Court concludes that W & S has, on behalf of CBT, performed certain compensable services pursuant to section 503(b)(4) and made a substantial contribution in the case concerning the preparation and filing of the involuntary petition and appointment of the Trustee, but not, however, to the full extent claimed by W & S. The Court agrees with decisions from other bankruptcy courts that services rendered in connection with the appointment of a trustee are compensable through the interplay of section 503(b)(3)(D) and (b)(4).

Judge Fox, confronted with this very issue, allowed the compensation sought in connection with the appoint of a trustee in *Paolino* and stated in relevant part:

Section 503(b)(3)(D) is derived from sections 242 and 243 of the prior Act, 11 U.S.C. §§ 642, 643 (repealed 1978) and therefore, decisions under the prior Act are relevant in construing this section of the Code. My research reveals at least two Act cases in which courts have approved the compensation of a creditor's attorney for services rendered in procuring the appointment of a receiver. *See Morse & Tyson v. Irving–Pitt Manufacturing Co.,* 18 F.2d 692 (8th Cir.1927); *Lincoln Printing Co. v. Middle West Utilities Co.,* 17 F.Supp. 799 (N.D.Ill.

1936). The concerns which would lead a court to appoint a receiver under the Act resemble the reasons a court may appoint a trustee under the Code.

71 B.R. at 580. Moreover, in *In re Catalina Spa & R.V. Resort, Ltd.,* 97 B.R. 13, 18 (Bankr.S.D.Cal.1989), the court held that the appointment of a trustee was a substantial contribution to the case, and thus, reasonable and necessary services rendered in connection with the appointment of a trustee were compensable. As Judge Hargrove in *Catalina Spa* aptly noted, "[o]nce the court determines that there has been a substantial contribution as a result of the motion to appoint trustee, it does not automatically follow that applicant is entitled to be compensated for all the hours it expended in connection with the motion to appoint trustee." *Id.* at 19.

■ With regard to reimbursement of expenses, W & S bears the burden of establishing that it is entitled to certain expenses which must be fully and clearly described. *In re Convent Guardian Corp.,* 103 B.R. 937, 939 (Bankr.N.D.Ill. 1989); *In re Affinito & Son, Inc.,* 63 B.R. 495, 497 (Bankr.W.D.Pa.1986). The Court will not assume any expense is necessary. *See Lindberg Products,* 50 B.R. at 221. An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client. *Wildman,* 72 B.R. at 731. The Court follows *Convent Guardian* which sets forth standards that professionals must adhere to when seeking reimbursement of expenses.

The parties have established the appropriate parameters of reasonable and necessary compensation; W & S at $37,702.00 and Citibank (albeit very reluctantly) at $15,709.80. Although the Court overrules Citibank's objections to the allowance of any compensation to W & S, the Court concludes that the fees sought are excessive and W & S somewhat over-lawyered many aspects of the case.

## IV. DISCUSSION

### A. COMPENSATION AWARDED

■ In accordance with the long standing practice and procedure in this district

and many Opinions by this Judge, the Court will not compensate professionals in the same firm for multiple attendance at court hearings or meetings when one or more of those professionals does not take an active part and the application itself makes no showing of compelling necessity for the second or other firm members to participate in the hearing or meeting. *See Pettibone,* 74 B.R. at 303; *Wildman,* 72 B.R. at 710. Highly compensated, experienced professionals are required to work independently to avoid the inflationary results on fee applications attendant to duplicative services. Several entries reflect multiple attendance or participation in court hearings, meetings and conferences, without the requisite showing of compelling necessity for such duplicative efforts. The Court hereby disallows the following entries:

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|------|----------|---------------|-------------|--------------|
| 02/06/89 | R. Barnes | .20 hours | $115.00 | $ 23.00 |
| 02/07/89 | J. Blanco | 1.60 hours | 175.00 | 280.00 |
| 02/08/89 | R. Barnes | .20 hours | 115.00 | 23.00 |
| 02/10/89 | J. Blanco | 2.30 hours | 175.00 | 402.50 |
| 02/10/89 | C. Lipoff | .20 hours | 135.00 | 27.00 |
| 02/15/89 | J. Blanco | 1.70 hours | 175.00 | 297.50 |
| 02/20/89 | J. Blanco | 2.10 hours | 175.00 | 367.50 |
| 02/22/89 | J. Blanco | .30 hours | 175.00 | 52.50 |
| 02/23/89 | J. Blanco | 1.20 hours | 175.00 | 210.00 |
| 02/28/89 | J. Blanco | .10 hours | 175.00 | 17.50 |
| 03/07/89 | G. Munitz | 1.00 hours | 250.00 | 250.00 |
| 03/07/89 | S. Schulte | .80 hours | 190.00 | 152.00 |
| 03/07/89 | S. Schulte | .60 hours | 190.00 | 114.00 |
| 03/08/89 | G. Munitz | 4.50 hours | 250.00 | 1,125.00 |
| 03/08/89 | J. Blanco | 4.30 hours | 175.00 | 752.50 |
| | | | | $4,094.00 |

Additionally, three attorneys at W & S not only appeared before the Court on March 8, 1989, on the motion to appoint a trustee, but all three expended time preparing for same. The Court has previously held that only one attorney will be compensated for participation at a hearing unless there is some showing of the necessity for more than one attorney to participate. No such showing has been made by W & S. Moreover, the Court will not compensate all three lawyers for the time expended in preparation of the hearing. Therefore, the time expended by G. Munitz on 03/07/89 for 2.10 hours at $250.00 per hour for a total of $525.00 is disallowed. In addition, the time expended by J. Blanco on 03/08/89 for 4.40 hours at $175.00 per hour for a total of $770.00 is hereby disallowed. The Court will allow the time expended by S. Schulte in preparation for and participation at the hearing on the appointment of a trustee.

■ Furthermore, the Court finds that the time expended responding to press inquiries is not compensable under the scope of section 503(b)(3) and (4). Public relations and such services are not normally compensable attorneys' work and were not rendered in connection with the preparation and adjudication of the involuntary petition. Hence, the entry for G. Munitz on 02/21/89 for .60 hours at $250.00 per hour, is hereby disallowed in the sum of $150.00.

■ Moreover, the time spent attempting an unsuccessful pre-bankruptcy workout is not allowed as those services are not compensable under the statute. Such services performed by G. Munitz and J. Blanco related to negotiations with creditors and counsel for the Debtor prior to the filing of the involuntary petition. The Court finds that these services are not compensable under section 503(b)(3) and (4). Further-

more, under the eighth *Johnson* factor, they did not benefit the estate because the attempted workout was a failure as the subsequently extensive bankruptcy proceedings demonstrated. Consequently, the following entries are disallowed:

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|------|----------|---------------|-------------|--------------|
| 02/06/89 | J. Blanco | .70 hours | $175.00 | $ 122.50 |
| 02/07/89 | G. Munitz | 4.90 hours | 250.00 | 1,225.00 |
| 02/07/89 | J. Blanco | 1.60 hours | 175.00 | 280.00 |
| 02/16/89 | J. Blanco | .30 hours | 175.00 | 52.50 |
| | | | | $1,680.00 |

For the same reasons, the time expended conferring with non-petitioning creditors produced no demonstrable benefit to the estate and thus is not compensable. If time expended with the co-petitioning creditors is properly compensable when ultimately an order for relief issued, logically time expended in unsuccessfully trying to obtain additional creditor support is not properly compensable. Therefore, the following entries are hereby disallowed:

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|------|----------|---------------|-------------|--------------|
| 02/03/89 | G. Munitz | 1.80 hours | $250.00 | $ 450.00 |
| 02/04/89 | G. Munitz | .40 hours | 250.00 | 100.00 |
| 02/06/89 | G. Munitz | .40 hours | 250.00 | 100.00 |
| 02/08/89 | G. Munitz | .70 hours | 250.00 | 175.00 |
| 02/09/89 | G. Munitz | 2.70 hours | 250.00 | 675.00 |
| 02/10/89 | G. Munitz | 1.20 hours | 250.00 | 300.00 |
| 02/10/89 | J. Blanco | 1.40 hours | 175.00 | 245.00 |
| 02/13/89 | J. Blanco | 1.70 hours | 175.00 | 297.50 |
| 02/15/89 | J. Blanco | .70 hours | 175.00 | 122.50 |
| 02/15/89 | G. Munitz | 4.30 hours | 250.00 | 1,075.00 |
| 02/16/89 | G. Munitz | 5.20 hours | 250.00 | 1,300.00 |
| 02/16/89 | C. Lipoff | .70 hours | 135.00 | 94.50 |
| 02/17/89 | G. Munitz | .40 hours | 250.00 | 100.00 |
| | | | | $5,034.50 |

The Court does not deem compensable any of the excessive time expended by W & S compiling a list of potential candidates for the Trustee position. Pursuant to 11 U.S.C. § 1104(c), the appointment authority in cases where a Chapter 11 trustee is appointed for cause is vested in the United States Trustee, not the petitioning creditors. Even if CBT sought input into the United States Trustee's selection process, once the Court ordered the appointment of a trustee in this case, it was the sole duty of the United States Trustee to select a qualified candidate to serve in that role. Accordingly, the 8.2 hours expended by W & S conferring with other creditors about one or more potential candidates, and the time spent preparing a list of same did not demonstrably benefit the estate as a whole. The following entries are thus disallowed:

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|------|----------|---------------|-------------|--------------|
| 02/14/89 | J. Blanco | .60 hours | $175.00 | $ 105.00 |
| 02/15/89 | J. Blanco | .20 hours | 175.00 | 35.00 |
| 02/20/89 | J. Blanco | .80 hours | 175.00 | 140.00 |

| DATE | ATTORNEY | TIME EXPENDED | HOURLY RATE | DISALLOWANCE |
|---|---|---|---|---|
| 02/20/89 | J. Blanco | .50 hours | $175.00 | $ 87.50 |
| 02/21/89 | G. Munitz | .10 hours | 250.00 | 25.00 |
| 02/22/89 | J. Blanco | .50 hours | 175.00 | 87.50 |
| 02/23/89 | G. Munitz | .20 hours | 250.00 | 50.00 |
| 03/01/89 | G. Munitz | .80 hours | 250.00 | 200.00 |
| 03/02/89 | G. Munitz | 2.50 hours | 250.00 | 625.00 |
| 03/13/89 | J. Blanco | 1.60 hours | 175.00 | 280.00 |
| 03/13/89 | G. Munitz | .40 hours | 250.00 | 100.00 |
| | | | | $1,735.00 |

 Lastly, the Court will not compensate professionals at hourly rates of $175.00 and $250.00 for ministerial time expended in physically filing the involuntary petition. This task could have been performed by a paralegal or a clerk and did not require the high degree of skill and expertise that the attorneys at W & S possess. Hence, the Court hereby disallows the entries of G. Munitz on 02/21/89 for .20 hours at $250.00 for $50.00 and J. Blanco on 02/21/89 for .50 hours at $175.00 for $87.50, for a total disallowance of $137.50.

The following is a recapitulation of the disallowed compensation sought:

| | SERVICES PERFORMED | AMOUNT DISALLOWED |
|---|---|---|
| 1. | Multiple attendance at hearings and inter-office conferencing | $ 4,094.00 |
| 2. | Preparation for hearing on involuntary petition and motion to appoint the Trustee | 1,295.00 |
| 3. | Press inquiries | 150.00 |
| 4. | Pre-bankruptcy workout | 1,680.00 |
| 5. | Time expended with nonpetitioning creditors | 5,034.50 |
| 6. | Preparing list of candidates for the Trustee position | 1,735.00 |
| 7. | Filing the involuntary petition | 137.50 |
| | TOTAL | $14,126.00 |

## B. REIMBURSEMENT OF EXPENSES

The Court finds that the filing fee for the involuntary petition was an actual and necessary expense required by 28 U.S.C. § 1930. Accordingly, the Court hereby allows in full the expense reimbursement request in the amount of $500.00.

## V. CONCLUSION

For the reasons set forth herein, the Court hereby awards W & S compensation in the amount of $23,576.00 and authorizes reimbursement of expenses in the sum of $500.00. Citibank's objections are sustained in part and overruled in part.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.